NOLAN and another, Executors, Respondents, vs. STANDARD FIRE INSURANCE COMPANY, Appellant.

*March 11—April 13, 1943.*

For the appellant there was a brief by *Nolan, Dougherty, Grubb & Ryan,* and oral argument by *Crosby H. Summers,* all of Janesville.

For the respondents there was a brief by *McGowan & Geffs* of Janesville, and oral argument by *Jacob Geffs.*

FRITZ, J. In the policy on which plaintiffs seek to recover for loss sustained by reason of damage caused by a windstorm on August 10, 1941, to a tobacco barn, the provision which plaintiffs claim affords coverage on the barn reads: "$200 on shingle-roof tobacco barn at 1524 Beloit Ave." They owned, as cotenants, forty-six acres of farm land at the outskirts of Janesville. On the north eleven acres there was a dwelling numbered 1416 Beloit avenue, together with some farm buildings. On the adjacent thirty-five acres to the south there was a dwelling numbered 1602 Beloit avenue, with another set of farm buildings, including two tobacco barns. The policy in suit was written by defendant's agent, Floyd Yeomans, at the request of the cotenant, J. B. Francis (now deceased), in renewal of a policy on the dwelling at 1416 Beloit avenue and the accompanying farm buildings. Yeomans testified,—subject to plaintiffs' objection to his competency in view of sec. 325.16, Stats., and the death of Francis,—to the following effect. Francis told him there was no wind insurance on the barns on the south farm, and to look them over and see what should be done about them. On this farm Yeomans found a dwelling with a small barn, and one tobacco barn north and another south of the dwelling. The south barn was newer, in better condition and completely inclosed, but the north barn was older, not inclosed entirely, and the wide doors were off their tracks. Upon returning Yeomans told Francis that the most southerly tobacco barn could be insured but that he did not care to write wind insurance on the north tobacco barn and the small barn because they were not worthy of insurance. Francis then told him to insure the south tobacco barn for $200 and to let the rest of the buildings on the south farm go without insurance. Yeomans testified that while making his inspection at the south farm he saw no numbers on the tobacco barns, and took no note of the street number of the dwelling thereon, which was covered by another policy issued by his predecessor in business, who used the number "1524 Beloit Ave." in describing the prem-

ises.   Upon Yeomans' return to his office to write the policy
in suit, he took the description "1524 Beloit Ave." from that
policy and assumed that to be the correct number to use in
describing the south tobacco barn in the new policy, in which,
to describe the dwelling and buildings on the north farm, he
took the numbers 1416 and 1418 used by his predecessor in
the expiring policy.   By other evidence, which was undisputed
and clearly competent, the following facts were also estab-
lished.   Until Francis in 1939 turned the policy in suit over to
his cotenant, Cullen, he had no knowledge thereof or of the
circumstances surrounding its issuance; and did not know
which of the two tobacco barns was insured thereby.   On
March 29, 1940, a windstorm blew the south tobacco barn
about ten inches off its foundation, and a few panes of glass
were broken in the dwelling on the south farm; and Cullen
inspected the damage and notified Yeomans of a claim under
the policy for the damage to that barn.   Upon Yeomans re-
porting the claim to defendant, an adjuster was sent to that
farm and found that the south tobacco barn was damaged.
He found no street numbers on either of the tobacco barns, but
did find the number 1602 on the dwelling.   Upon meeting
Cullen at his office, they agreed on $25 as the damage to the
tobacco barn; and when Cullen then told the adjuster that a few
window lights of the dwelling were broken, they also agreed
on $4.50 for that damage without the adjuster disputing or
investigating that loss.   The proof of loss mailed to Cullen and
executed and returned by him shows that the window-damage
claim was on the dwelling at 1416 Beloit avenue; and the loss
paid was $25 for the damage by the windstorm on March 29,
1940, to the south tobacco barn, described in the proof of loss
as at 1524 Beloit avenue, and $4.50 for broken glass in the
dwelling at 1416 Beloit avenue.   When another windstorm, on
August 10, 1941, destroyed the north tobacco barn, Cullen's
office informed Yeomans; and when it was reported to him by
an adjuster, who investigated this damage, that it was the north
tobacco barn which was then blown down, defendant refused

to pay plaintiffs' claim on the ground that it had not insured that barn.

If Yeomans was competent to testify in this action, and his testimony to the above effect was admissible, the trial court was clearly in error in finding and concluding that the north tobacco barn, which was destroyed on August 10, 1941, was within the intended coverage of the policy in suit; and that plaintiffs were entitled to recover $170.50 damages, as the balance of the amount of $200, specified in the policy, after deducting therefrom $29.50, paid by defendant to plaintiffs for the damage caused by the storm on March 29, 1940, and which the court found "the defendant through mistake paid to the plaintiffs . . . on property not covered by the said policy of insurance." Yeomans' testimony clearly establishes, without any credible evidence to the contrary, that to the knowledge and with the acquiescence and consent of the co-tenant Francis only the south tobacco barn could be and was intended to be insured under the policy which was written by Yeomans.

However, although Yeomans was permitted to testify, subject to plaintiffs' objection that he was incompetent under sec. 325.16, Stats., as to his transaction with the deceased J. B. Francis, the court, in subsequently deciding the case, concluded,—

"It appears by his own testimony . . . that Mr. Yeomans has some slight interest in the lawsuit, based on his commission or rebates, and although slight, it is still an interest and would therefore render his testimony incompetent as to transactions had with the deceased J. B. Francis. There is no other testimony, outside of the policy itself, to locate the building insured. In my opinion the policy sufficiently designates the building blown down as being the one covered."

The court's conclusion that Yeomans was rendered incompetent to testify because he has "some slight interest" in the lawsuit was based upon plaintiffs' contention that, inasmuch

as defendant had alleged, as a separate defense, that if the court should find the north tobacco barn was the one within the description in the policy, then it was entered into by a mistake because of which defendant might be entitled to rescission, and in that event part of Yeomans' commission on the $4 premium would be charged back against him, and by reason of such possible loss he must be considered to have such an interest in the action as renders him incompetent to testify in view of the provisions in sec. 325.16, Stats., that—

"No party or person in his own behalf or interest . . . shall be examined as a witness in respect to any transaction or communication by him personally with a deceased . . . person in any civil action or proceeding, in which the opposite party derives his title or sustains his liability to the cause of action from, through or under such deceased . . . person."

The court ultimately sustained that contention and ruled out Yeomans' testimony, although there was no attempt by defendant on the trial to establish the defense of rescission. Yeomans' testimony was offered by the defendant to prove solely that the south tobacco barn was the one intended to be insured and described in the policy. It was not offered nor did it in any way tend to prove any mistake or misunderstanding between him and Francis. On the contrary, it was conclusive that there was no misunderstanding between them and probative of the true contract that a valid policy was in force and effect on the south barn. But, even if testimony by Yeomans had been offered as to facts which would have entitled defendant to a rescission of the policy, that clearly would not be "in his own behalf or interest." On the contrary, if,—as plaintiffs claim,—such rescission would have resulted in depriving Yeomans of some commission, that result, and his testimony to establish such rescission, would clearly be against or adverse to and not "in his own behalf or interest." Moreover, sec. 325.16, Stats., does not exclude testimony of per-

sons who are not parties to and actually have no legal interest whatever in the subject matter of the action, although they may remotely be interested, in some other sense of that term, in the outcome of the litigation. *Will of Bruendl,* 102 Wis. 45, 49, 78 N. W. 169. Likewise the statute does not prohibit a person, who, as Yeomans, was but an agent, as distinguished from a stockholder, officer, or trustee of a corporation, from testifying to transactions had with a deceased (*Hanf v. Northwestern Masonic Aid Asso.* 76 Wis. 450, 45 N. W. 315).

Plaintiffs also contend that as the house numbers along Beloit avenue grew larger going south and the dwelling at number 1602 was north of the south tobacco barn, the description in the policy reading "tobacco barn at 1524 Beloit Ave." can be held applicable only to the barn to the north of the dwelling; that consequently there is no ambiguity in that description as to what barn was insured; and that therefore Yeomans' testimony was inadmissible to vary or contradict that written description in the absence of fraud or mistake, or to establish a foundation for the reformation of the policy. On the other hand, defendant contends that as there was no building, which was numbered 1524, the policy could with equal force be applied to either one of the two tobacco barns; that consequently there is a latent ambiguity, which is not the result of the number 1524 being used in the policy, but is due entirely to the fact that there were two tobacco barns on the farm, neither of which was in fact numbered 1524, but to either of which the description otherwise was equally applicable; and that therefore the parol evidence was admissible to determine the subject of the insurance.

Defendant's contentions must be sustained. As is stated in 8 Couch, Insurance, "Evidence is admissible to determine the subject of insurance in those cases where the description is equally applicable to either of two or more subjects, or where a doubt appears, as to what was intended to be covered" (sec. 2188); ". . . a mere mistake as to the street number of the property insured may be shown, where the intention

of the parties as to the property is clear" (sec. 2187) ; ". . . it is said that merely describing property as on a certain block is not conclusive, where the weight of the testimony indicates that it was intended to insure property on another block" (vol. 3, sec. 747). Those rules were applied in *Faben v. Northwestern Nat. Ins. Co.* 133 Wash. 486, 233 Pac. 915; *Firemen's Ins. Co. v. Yarbrough,* 234 Ky. 525, 28 S. W. (2d) 771, 773, 774; *Scottish Union & National Ins. Co. v. McKone* (8th Cir.), 227 Fed. 813; and are in accord with the well-established rule that, although oral testimony is generally not admissible to vary or contradict the terms of a written contract, it is admissible—

"for the purpose of applying the contract to the subject with which it deals, and, in case of ambiguity then appearing, to establish the facts and circumstances under which the agreement was made in order that the language thereof may be read in the light of the environment at the time the parties chose such language to express their intention." *Klueter v. Joseph Schlitz Brewing Co.* 143 Wis. 347, 353, 128 N. W. 43; *Ogden v. Straus Building Corp.* 187 Wis. 232, 202 N. W. 34; *Green v. Loberg,* 205 Wis. 221, 237 N. W. 274.

It follows that, as Yeomans' testimony was competent and uncontradicted and clearly establishes the mutual understanding and intention on the part of Francis and Yeomans that the insurance was to cover only the south tobacco barn, and as this intention was recognized by Cullen in claiming and securing a settlement under the policy for the damage to that barn by the first storm on March 29, 1940, the trial court's finding to the effect that the north barn, which was subsequently destroyed, was within the coverage of the policy is against the clear preponderance of the credible and competent evidence, and that therefore the court's conclusion that plaintiffs are entitled to recover under the policy for that loss cannot be sustained.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment dismissing the complaint.