CARSON, Administratrix, Appellant, v. CITY OF BELOIT and others, Respondents.

*September 6—October 7, 1966.*

For the appellant there were briefs by *Phillips, Hoff-man & Phillips* of Milwaukee, and oral argument by *Bert-ram J. Hoffman.*

For the respondent city of Beloit there was a brief by *Nowlan, Mouat, Lovejoy, McGuire & Wood* of Janesville, and oral argument by *Hiram Nowlan, Jr.*

For the respondents Clark and Matthews there was a brief by *W. L. Jackman* and *Hart, Kraege, Jackman & Wightman,* all of Madison, and oral argument by *W. L. Jackman.*

HALLOWS, J. In submitting the issues to the jury, the court couched the inquiries concerning the acts of the doctors and the hospital in terms of negligence as ulti-mate-fact questions. The verdict inquired whether the hospital was negligent in its nursing care and whether the doctors were negligent in their professional-medical care and treatment. In its instructions the court correctly de-

fined negligence in terms of the respective duty to use care, judgment and skill required of the doctors and of the hospital, using in respect to the doctors civil instruction 1023, Wis J I. It is contended the trial court should not have submitted the malpractice issues in terms of negligence, because in such terms the questions are likely to mislead the jury. It is contended such questions should only be framed in terms of standard of care and skill as was done in *Fehrman v. Smirl* (1963), 20 Wis. (2d) 1, 121 N. W. (2d) 255, 122 N. W. (2d) 439; (1964), 25 Wis. (2d) 645, 131 N. W. (2d) 314.

We think the court did not err in this respect. The form of verdict rests in the discretion of the trial court and the result of the exercise of that discretion will not be rejected unless the inquiry, taken with the applicable instruction, does not fairly present the issue of fact to the jury for determination. *Ehlers v. Automobile Liability Co.* (1919), 169 Wis. 494, 501, 173 N. W. 325. In *Krause v. Veterans of Foreign Wars Post No. 6498* (1960), 9 Wis. (2d) 547, 554, 101 N. W. (2d) 645, this court suggested in negligence cases that trial courts frame the questions relating to all parties in terms of negligence so as to make it easier for the jury to compare the negligence of the parties.

The plaintiff argues the inquiry concerning contributory negligence of Carson should not have been given. This question asked whether Carson was negligent "with respect to following any instructions given to him." Under the pleading and the proof, this question could only be applicable to the hospital. There is no evidence Carson failed to follow any instructions of the doctors after his injury, and certainly any negligence of his which caused his fall and injury cannot be compared with any negligence of the doctors which might have caused his death. The evidence showed that before Carson fell a nurse's aide had instructed him to stay in bed, to use the urinal and to put on his light so the nurses could collect each specimen separately. This is the only evidence of any instructions

given Carson to stay in bed and it is contended this witness was improperly permitted to testify to this conversation with the deceased. We think not. Objection was made to the testimony on general grounds and not to the witness' competency. To be valid, an objection based on sec. 325.16, Stats., must be addressed not to the evidence as being inadmissible, but to the competency of the witness to testify to such conversation. This rule is of such long standing one wonders why it continues to plague the trial bar. *Wells v. Chase* (1905), 126 Wis. 202, 105 N. W. 799; *Zimdars v. Zimdars* (1941), 236 Wis. 484, 295 N. W. 675; *Will of Schultz* (1948), 253 Wis. 86, 33 N. W. (2d) 169; *Estate of Chmielewski* (1962), 17 Wis. (2d) 486, 117 N. W. (2d) 601; *Estate of Robinson* (1963), 20 Wis. (2d) 626, 123 N. W. (2d) 515. However, the proper objection would have been of no avail, because the nurse's aide was competent to testify. She had no legal interest in the subject matter of the case. While it might be said she was remotely interested in another sense in the outcome of the litigation because she was an employee of one of the parties, such interest is not sufficient to disqualify her under sec. 325.16. *In re Will of Bruendl* (1899), 102 Wis. 45, 49, 78 N. W. 169; *Nolan v. Standard Fire Ins. Co.* (1943), 243 Wis. 30, 9 N. W. (2d) 74.

True, the question was too broadly phrased to include the defendant doctors because under the evidence any contributory negligence of Carson could not be set off against any negligence of the doctors. Likewise, the questions on apportionment of negligence should not have included the doctors. However, this error was not prejudicial in view of the answers to the other inquiries finding the defendants were not negligent.

The dispute in the evidence whether the bedrails were up or down seems to be unimportant on the question of contributory negligence. Bedrails are used to keep patients from falling out of bed. The ones used on Carson's bed would not have prevented him from getting out of bed. This is not a case of a patient who falls out of bed

but one who deliberately gets out of bed. We think the question of contributory negligence was properly in the case against the hospital and can be considered surplusage in respect to the doctors in view of the answers in the verdict.

The plaintiff predicates error on the trial court's refusal to submit an instruction on *res ipsa loquitur* in respect to the inquiry concerning the defendant doctors' failure to correctly diagnose Carson's injury as a skull fracture, especially in view of the complaints of Carson, and their failure to make use of proper tests for diagnosing a skull fracture. Dr. Clark had the story of the fall from the hospital report and also questioned Carson. He made a physical examination of the patient and concluded there was no need to take X rays to determine if there was a skull injury and prescribed bed rest. There is an abundance of testimony, which is conflicting, on what other doctors would have done and what the standard practice in the city of Beloit is in this situation, both by way of diagnosis and treatment. What Drs. Clark and Matthews did and did not do is not in doubt.

We think the plaintiff proved too much in the way of negligence to be entitled to an instruction on *res ipsa loquitur*. In *Fehrman v. Smirl* (1963), 20 Wis. (2d) 1, 121 N. W. (2d) 255, 122 N. W. (2d) 439, we stated that a *res ipsa loquitur* instruction, worded so as to permit the jury to infer negligence, may be given in a malpractice case in which a layman could say, either as a matter of common knowledge or with the aid of expert medical testimony, that the consequence of the medical treatment was not that which ordinarily results if due care is exercised. In the second *Fehrman v. Smirl Case* (1964), 25 Wis. (2d) 645, 653, 131 N. W. (2d) 314, we again addressed ourselves to when an instruction should be given, and we stated that "if there has been such substantial proof of negligence as to render superfluous the giving of an instruction on *res ipsa loquitur*" such instruction need not be given. In the instant case the plaintiff adduced not

circumstantial evidence but direct expert testimony of the negligent conduct on the part of the doctors, and since this direct testimony would be sufficient to sustain a verdict, if accepted by the jury, the instruction would have been superfluous. The purpose of the instruction is to allow a permissive inference from circumstantial evidence which if not permitted would leave the plaintiff's case lacking in sufficient proof to go to the jury. See *Beaudoin v. Watertown Memorial Hospital,* ante, p. 132, 145 N. W. (2d) 166, a malpractice case, wherein we held there was enough but not too much evidence to evoke the giving of a *res ipsa loquitur* instruction.

Plaintiff raises several other objections to the instructions which we believe have no merit. She claims the short instruction on general negligence and the using of the word "foreseeability" therein was erroneous. The term "foreseeable" was correctly used in defining negligence. *Osborne v. Montgomery* (1931), 203 Wis. 223, 234 N. W. 372. While we think it was not necessary to give this instruction in a malpractice case where the specific acts of negligence are in terms of the medical standard of care in the community, we cannot say the instruction was prejudicial.

Nor is there any merit in the objection to the instruction cautioning the jury that it had to find a standard of care applicable to the hospital before it could find the hospital was negligent in its care. A similar instruction on standards was given in reference to the doctors' activities. These were proper instructions concerning the proof of the standards and did not inform the jury of the effect of its answer as argued by the plaintiff.

Likewise, the use of the term "judgment" in the instruction on the standard of professional care and skill of doctors was not prejudicial. Although it is pointed out in *Fehrman v. Smirl* (1963), 20 Wis. (2d) 1, 27, footnote 7, the word "judgment" is desirable when a physician exercises a choice between two or more methods of treat-

ment after a diagnosis, this language does not mean the use of the word "judgment" in describing the standard of care and skill of a doctor in other situations is prejudicial. In fact one might well say judgment is necessary in making a diagnosis.

Plaintiff complains the court in giving instructions read excerpts from opinions of this court, a practice which was disapproved in *Schultz v. Tasche* (1918), 166 Wis. 561, 165 N. W. 292. The difficulty with using extracts from appellate court opinions is that they are not written for or with such use in mind. Legal opinions are not written for a lay jury. However, if language in an opinion is appropriate and properly worded for use as an instruction and contains no irrelevant matter, there is no error in using it.

The instruction on whether the doctors' negligence was causal was perhaps too terse and on one interpretation not completely accurate. The instruction stated, "You are instructed that a failure to make a correct diagnosis is not a cause of injury, damage, or death unless it was followed by improper treatment by Doctors Clark and Matthews." The basis for this instruction is the language in *McManus v. Donlin* (1964), 23 Wis. (2d) 289, 295, 127 N. W. (2d) 22, "An incorrect diagnosis is not actionable unless followed by improper treatment." While a doctor does not guarantee or insure the correctness of his diagnosis he must use the proper degree of skill and care in making the diagnosis and if through the failure to use the proper degree of skill and care the diagnosis is an erroneous one, the doctor is negligent.

However, a wrong diagnosis made through negligence to be actionable like any other specie of negligence must be a substantial factor in causing the injury of the plaintiff. Normally, the causation depends upon whether the treatment or lack of treatment resulting from the negligent diagnosis has done the harm or been a substantial factor in causing the injury to the patient. "Improper

treatment" as used in *McManus* is to be understood not only in a positive sense of what was done but also in the negative, *i.e.,* the lack of proper treatment or what was not done and which would have been done or given upon a correct diagnosis. The instruction given requiring improper treatment was susceptible to the interpretation that lack of proper treatment for the undiagnosed skull fracture was not included in the words "improper treatment." In view of the findings of the jury that the defendants were not negligent, it did not reach and answer the causation question and we must hold that this instruction was not prejudicial.

The plaintiff contends the instructions overemphasized situations in which the defendant doctors would not be negligent. Some of these instructions could be classified as boiler plate. But we do not believe from a reading of all the instructions as they were presented to the jury that an impression was given unduly favorable to the defendant doctors.

It is asserted by the plaintiff that the hospital and the two doctors were guilty of causal negligence as a matter of law and the court should have changed the answers in the verdict. In respect to the hospital this argument is grounded upon the following reasons: Carson was not told to stay in bed because of his weakened condition, no written orders were given that he should stay in bed, the failure to keep bedrails up and failure of the hospital radiologist to report the findings of the X rays to the treating physician. The facts do not sustain this argument. Carson was told to stay in bed. The reason for which he was to stay in bed is unimportant. It is not necessary that the orders be written if communicated to the patient. If the bedrails were down, failure to keep them up was not important as Carson could still get out of bed. Complaints against the radiologist cannot be imputed to the hospital since he was neither the hospital's agent nor its employee.

On the issue of the defendant doctors' negligence, the testimony raised a question of fact for the jury. The testimony was conflicting as to the standard of care applicable to the situation in which the defendant doctors found themselves. No useful purpose is served by extending this opinion with a recital of the detailed evidence. While the jury could have found these two doctors negligent and causally so, it did not, and we cannot find them on the evidence negligent as a matter of law, which we would have to do to find error in the failure of the trial court to change the answers in the verdict.

We have examined the many claims of error in respect to evidentiary rulings, but we find no error. Neither do we think the objections require comment.

Lastly, this court is asked to find an abuse of discretion on the part of the trial court in not granting a new trial in the interest of justice. The plaintiff contends that even though the individual errors complained of may be not sufficient to sustain a reversal, taken together they indicate justice has miscarried. While a plausable argument is made that the sum total of the errors complained of contributed to the final result, the greatest force of appellant's argument lies in the fact that the public has a right to expect better diagnostic procedure and a higher professional standard of care by a hospital and the medical profession. But courts do not create such professional standards. They are established in each case by the proof. On the facts presented and under the law as it now exists, we do not think it is probable that justice miscarried and consequently the trial court did not abuse its discretion in failing to grant a new trial.

*By the Court.*—Judgment affirmed.

HEFFERNAN, J., dissents.