Kurt EHLINGER and Cory Ehlinger, Minors, by their Guardian ad Litem, Larry Ehlinger, and Carol Ehlinger, Plaintiffs-Appellants,

v.

Donald R. SIPES, M.D., Edward G. Vogel, M.D., Bay West Gynecology & Obstetrics, Ltd., Wisconsin Patients Compensation Fund, and John Doe Insurance Companies, Defendants-Respondents.†

Court of Appeals

*No. 88–0806. Orally argued October 25, 1988.—Decided December 20, 1988.*

(Also reported in 434 N.W.2d 825.)

† Petition to review granted.

261

For appellants there were briefs filed by *Robert A. Slattery* of *Frisch, Dudek and Slattery, Ltd.,* of Milwaukee.

For respondent there was a brief filed by *Peter J. Hickey* and *Mary E. Murphy* of *Everson, Whitney, Everson & Brehm, S.C.,* of Green Bay.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.    This is an obstetrical medical malpractice case that arises out of the premature births of identical twins, Cory and Kurt Ehlinger. The twins' guardian ad litem and parents appeal a judgment directing a verdict in favor of Dr. Donald Sipes and Dr. Edward Vogel and their medical clinic. The trial court concluded the Ehlingers did not produce sufficient credible evidence for a jury to determine that Dr. Sipes's negligent failure to diagnose Carol Ehlinger's multiple pregnancy and Dr. Vogel's negligent failure to diagnose labor and administer preventative labor drugs caused the injuries to the children.

We conclude that there is credible evidence to submit to a jury the question of whether Dr. Sipes negligently caused the injuries. That portion of the judgment dismissing Dr. Sipes and the clinic is there-

fore reversed and remanded. However, there is no credible evidence to support a finding that Dr. Vogel negligently caused the injuries. Therefore, that portion of the judgment is affirmed.

Carol Ehlinger, a healthy young woman who had previously given birth to a healthy baby under Dr. Sipes's care, retained the doctor as her treating physician during this pregnancy. The Ehlingers allege that Dr. Sipes failed to diagnose the multiple pregnancy despite Carol's complaints about the unusualness of the pregnancy and the discrepancies in medical data between this pregnancy and Carol's previous pregnancy. Furthermore, Dr. Sipes did not conduct an ultrasound, which the Ehlingers contend would have revealed the multiple pregnancy.

A major risk of multiple pregnancy is the onset of premature labor and delivery. The Ehlingers assert that Dr. Sipes's failure to properly diagnose the multiple pregnancy prevented Carol from taking precautions to prevent the twins' premature births.

Dr. Vogel, Dr. Sipes's partner, was on call the night Carol's contractions began. Carol called the medical clinic and described her pains. Dr. Vogel misdiagnosed Carol's contractions as gastroenteritis rather than the onset of premature labor and advised Carol to take a hot bath. Carol followed the doctor's instructions, but as the contractions progressed she departed for the hospital more than three hours after the contractions began. The Ehlingers allege that Dr. Vogel's negligent misdiagnosis of gastroenteritis prevented the administration of preventative labor drugs to Carol and thereby also caused the premature births.

The multiple pregnancy was first diagnosed during labor. Cory was born deaf and now suffers from a speech deficiency and a development deficiency. Kurt was born

mentally retarded and has cerebral palsy with spastic quadriplegia.

Dr. Sipes concedes he was negligent in failing to diagnose the multiple pregnancy. He also concedes the premature births caused the injuries to the twins. He disputes, however, that his failure to diagnose the multiple pregnancy caused the premature births.

Thus, the issue is whether the failure to diagnose Carol Ehlinger's multiple pregnancy and the lost opportunity to respond to such a diagnosis was sufficient evidence for the jury to determine whether such negligence substantially caused the premature births of the twins and therefore their injuries.

At the close of the Ehlingers' case, the doctors moved to dismiss the action because the Ehlingers failed to prove that the doctors negligently caused the twins' premature births. The trial court granted the doctors' motion, even though it concluded that credible evidence indicated Dr. Sipes negligently failed to diagnose the multiple pregnancy and Dr. Vogel negligently delivered the twins. The trial court directed a verdict against the Ehlingers because they failed to present evidence establishing a causal connection between the doctors' negligence and the twins' premature births. The trial court reasoned that evidence of increased risk of harm to Carol and the twins on the theory of lost chance was not sufficient to meet the burden of proof on causation. It concluded therefore that it would not allow the jury to speculate about the evidence of increased risk of harm.

When reviewing a directed verdict, this court must view the evidence most favorably against the party whom the verdict is sought and, if there is any credible evidence to sustain a defense or cause of action, the

case must be submitted to the jury. *Wisconsin Natural Gas Co. v. Ford, Bacon & Davis Const. Corp.,* 96 Wis. 2d 314, 338, 291 N.W.2d 825, 837 (1980). It is a question of law whether the evidence is sufficient for the plaintiffs to meet their burden of proof. *Seraphine v. Hardiman,* 44 Wis. 2d 60, 65, 170 N.W.2d 739, 742 (1969).

The Ehlingers argue that the increased risk theory is a sufficient basis to establish causation. Dr. Sipes disagrees and contends that even if we accept the increased risk theory as a basis for causation, the Ehlingers still must present evidence that one or more of the preventative measures such as bed rest or medication would have prevented the premature births. This is simply another way of stating the "but for" test; that is, but for the negligent diagnosis, the premature births would never have occurred.

The causation inquiry is shaped by the substantial factor test. Causation may be established if a party's action substantially causes the resulting harm; a party's action need not be the sole or primary factor before liability attaches. *Schnabl v. Ford Motor Co.,* 54 Wis. 2d 345, 353–54, 195 N.W.2d 602, 607 (1972). A negligent diagnosis may be actionable like any other species of negligence so long as it is a substantial factor in causing the injury to the plaintiff. *See Carson v. City of Beloit,* 32 Wis. 2d 282, 291, 145 N.W.2d 112, 116 (1966). An incorrect diagnosis may be actionable if followed by improper treatment, which may include omitted treatment resulting from the misdiagnosis. *Id.* at 291–92, 145 N.W.2d at 116–17.

Under sec. 323 of the Restatement (Second) of Torts (1965), a person who negligently renders aid and consequently increases the risk of harm to those he or

she may be trying to assist may be liable for damages. Section 323 reads:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm ....

Other jurisdictions have held that once a party introduces evidence that another's negligent act or omission substantially increased the risk of harm and that harm has in fact been sustained, it becomes a question of fact for the jury to determine whether that increased risk of harm was a substantial factor in producing the harm. *Sharp v. Kaiser Found. Health Plan,* 710 P.2d 1153, 1156 (Colo. App. 1985); *aff'd,* 741 P.2d 714 (1987); *Hamil v. Bashline,* 392 A.2d 1280, 1288 (Pa. 1978)[1] ; *Evers v. Dollinger,* 471 A.2d 405, 413 (N.J. 1984); *Herskovits v. Group Health Co-op,* 664 P.2d 474, 477 (Wash. 1983). In other words, if evidence permits a finding that a party's negligence increased the risk of harm or deprived the other party of a significant chance to avoid further harm, it is left for the jury to decide whether the tortfeasor's negligence caused the injury. *Sharp,* 710 P.2d at 1156.

In *Jones v. Montefiore Hosp.,* 431 A.2d 920 (Pa. 1981), the plaintiff brought a medical malpractice suit against her physicians for failure to diagnose breast cancer. Even though the plaintiff's physician discov-

---

[1]*Rev'd on other grounds and remanded for a new trial,* 455 A.2d 1204 (1983).

ered masses in her breast, he failed to palpate the mass or perform other tests. Several months later, cancer was discovered following a second opinion, and the plaintiff underwent a modified radical mastectomy. The Pennsylvania Supreme Court held that the trial court erred by refusing to instruct the jury that the physicians could be liable if their negligence increased the risk of harm to the patient and the increased risk was a substantial factor in causing the plaintiff's harm. *Id.* at 924. The court reasoned that because Pennsylvania has long recognized sec. 323, Restatement (Second) of Torts,[2] a jury cannot be precluded from determining whether the physician's conduct increased the risk of harm and, if so, whether the increased risk was a substantial factor in producing the harm. *Id.* at 924-25.

Similarly, the Colorado Appellate Court adopted this line of reasoning in *Sharp,* 710 P.2d at 1156. There, the defendant-doctor negligently misdiagnosed plaintiff's angina as stable rather than unstable, which plaintiff alleged reduced her chances of preventing her heart attack. The trial court granted summary judgment because the plaintiff had not presented evidence that "but for" the negligent treatment, she would not have had the heart attack. *Id.* at 1154-55. The appellate court reversed and remanded for a new trial, stating: "the jury should be allowed to decide the issue of causation because there is expert testimony that defendants substantially increased plaintiff's risk of the resulting harm or substantially diminished the chance of recovery." *Id.*

The reasoning of these and other jurisdictions is persuasive. If a plaintiff can establish evidence that

---

[2]*Hamil,* 392 A.2d at 1286.

indicates the defendant increased the plaintiff's risk of harm or substantially deprived the plaintiff of a fruitful opportunity,[3] there is no reason to prevent the jury from determining whether defendant's negligence was a substantial factor in causing the plaintiff's harm.

This evidence does not undermine the established standard of proving medical malpractice. The plaintiff must still prove malpractice to a reasonable degree of medical certainty and that this malpractice proximately caused the injury. *Treptau v. Behrens Spa, Inc.,* 247 Wis. 438, 444, 20 N.W.2d 108, 111 (1945). Thus, in our case the Ehlingers must prove to a reasonable degree of medical certainty that Dr. Sipes's failure to diagnose the multiple pregnancy increased the risk of the premature births and therefore deprived Carol of an opportunity to take precautions against premature labor.

Applying the analysis to this case, we conclude that the Ehlingers presented sufficient evidence for the jury to determine whether Dr. Sipes's negligent diagnosis caused the premature births. One of the Ehlingers' experts testified to a reasonable degree of medical probability that Dr. Sipes's failure to diagnose twins was a substantial contributing factor in causing the premature labor and delivery of the twins. Further, the expert testified that Dr. Sipes breached the standard of ordinary care owed to Carol by failing to keep the possibility of twins in mind during her pregnancy, even though ample medical evidence raised the question of multiple pregnancy.

---

[3] Although we use the terms "lost chance" and "lost opportunity" in our discussion of the case, this is not to be confused with the term "lost chance" as used in *Finn v. Schammel,* 140 Wis. 2d 763, 412 N.W.2d 147 (Ct. App. 1987).

The expert also testified that, without a proper diagnosis, Carol could not take care of preventing the premature births, and therefore Carol never received a chance to see if extended bed rest would have prevented the premature births. Along with other relevant testimony, we feel that the Ehlingers have established credible evidence so that the causation of Dr. Sipes's negligence should be submitted to the jury. We therefore remand this matter for trial.

Next, we apply this analysis to Dr. Vogel. The Ehlingers allege in their complaint that Dr. Vogel's negligent failure to diagnose labor and administer preventative labor drugs caused the twins' premature births and subsequent injuries. We conclude however that the evidence is insufficient to determine whether Dr. Vogel's improper diagnosis on the day of delivery caused either the premature births or injuries. At trial, the parties focused on Dr. Vogel's conduct in the delivery room instead of the effect his improper diagnosis may have had upon the premature births. There is no evidence, however, to support an inference that Dr. Vogel's negligence was a substantial factor causing the premature births or the injuries to the children. Therefore, we affirm that portion of the judgment dismissing the action against Dr. Vogel.

*By the Court.*—Judgment affirmed in part, reversed in part, and cause remanded.