Kurt EHLINGER and Cory Ehlinger, minors, by their Guardian ad Litem; Larry Ehlinger and Carol Ehlinger, Plaintiffs-Appellants,

v.

Donald R. SIPES, M.D., Edward G. Vogel, M.D., Bay West Gynecology & Obstetrics, Ltd., Wisconsin Patients Compensation Fund, and John Doe Insurance Companies, Defendants-Respondents-Petitioners.

Supreme Court

*No. 88-0806. Argued November 1, 1989.—Decided May 2, 1990.*

(Also reported in 454 N.W.2d 754.)

4

For the defendants-respondents-petitioners there were briefs filed by *Peter J. Hickey, Mary E. Murphy* and *Everson, Whitney, Everson and Brehm, S.C.,* Green Bay, and oral argument by *Mr. Hickey.*

For the plaintiffs-appellants-respondents there was a joint brief filed by *Robert A. Slattery, D. Sean O'Lochlayne* and *Slattery & Hausman, Ltd.,* Milwaukee; and *Lynn Carey* and *Peck & Carey, S.C.,* Oconomowoc and oral argument by *Robert A. Slattery.*

DAY, J. This is a review of that part of the decision of the court of appeals, *Ehlinger v. Sipes,* 148 Wis. 2d 260, 434 N.W.2d 825 (Ct. App. 1988), which reversed the judgment of the circuit court for Oconto county, the Honorable Robert O. Weisel, Reserve Judge, presiding, dismissing the Ehlingers' action against Dr. Sipes and Bay West Gynecology and Obstetrics, Ltd., for insufficiency of the evidence at the close of Plaintiffs' case. The Ehlingers' action against Dr. Vogel was also dismissed by the circuit court and on the same basis. The court of appeals affirmed that part of the circuit court's decision and that ruling is not challenged in this court. The question is whether the Ehlingers produced sufficient evidence from which the trier of fact could determine that Dr. Sipes' alleged negligence in failing to diagnose Mrs. Ehlinger's multiple pregnancy was a substantial factor in causing the injuries her twin children, Kurt and Cory, subsequently suffered as a result of being born prematurely. At trial, an expert witness called by the Ehlingers testified that Dr. Sipes' failure to diagnose that Mrs. Ehlinger was carrying twins constituted negligence and was a "substantial contributing factor" in causing the twins' injuries. The expert further testified that Dr. Sipes' negligence deprived Mrs. Ehlinger of the opportunity to receive treatment to prolong her pregnancy and

5

thus deprived her of the chance that the children could have been healthier. We conclude the expert's testimony was sufficient to present the causation question to the trier of fact.

Mrs. Ehlinger gave birth to Kurt and Cory on June 12, 1978. The twins were born prematurely after only thirty-two weeks of gestation. As a result of their premature births, Kurt suffers from spastic quadriplegia and Cory suffers from a severe hearing loss with related speech difficulties. The Ehlingers allege the injuries to Kurt and Cory were the result of Dr. Sipes' negligent failure to diagnose the twin pregnancy and to take measures to prevent premature delivery, allegedly a common complication in cases of multiple pregnancy.

Mrs. Ehlinger had previously been under Dr. Sipes' care while pregnant in 1975. The earlier pregnancy was carried full-term and Mrs. Ehlinger gave birth to a normal, healthy child. Mrs. Ehlinger testified at trial that during the course of her second pregnancy, several factors led her to suspect she might be carrying twins. Mrs. Ehlinger stated that she felt more fatigued, suffered from back pains, felt "life" earlier, and was noticeably larger and heavier than during her first pregnancy. Mrs. Ehlinger testified that she related these symptoms to Dr. Sipes and even directly asked him if it was possible she was carrying twins. Mrs. Ehlinger stated that Dr. Sipes "did not take her seriously" and told her not to worry. Nor did Dr. Sipes perform an ultrasound examination which, the Ehlingers allege, would have revealed the multiple pregnancy. It was not realized that Mrs. Ehlinger was carrying twins until she gave birth to the two children.

Dr. Sipes denies that his failure to diagnose Mrs. Ehlinger's multiple pregnancy constituted negligence or was a cause of Kurt's and Cory's injuries. Dr. Sipes was

called as an adverse witness at trial and he acknowledged the importance of properly diagnosing a multiple pregnancy and that a multiple pregnancy is by definition high risk. Dr. Sipes conceded that in a multiple pregnancy the likelihood of premature birth is increased and that as a result a different course of treatment is instituted towards preventing premature delivery, including warning the patient of the possibility of premature delivery, more frequent examinations, being certain of adequate nutrition, use of prophylactics, decreasing physical and emotional stress, bedrest, decreasing intercourse, and bringing the patient to the hospital earlier. Dr. Sipes further conceded that the injuries to Kurt and Cory were the result of their being born prematurely.

On the issue of causation, Dr. Bernard M. Nathanson, M.D., testified on the Ehlingers' behalf in part as follows:

> Q Doctor, let me ask you this: Do you have an opinion to a reasonable degree of medical probability as to whether or not the failure of Dr. Sipes to diagnose twins in this case was a substantial contributing factor in causing the premature labor and delivery that ultimately ensued?
>
> A Yes, I do.
>
> Q What is that opinion?
>
> A My opinion is that it was.
>
> Q Could you explain that to the Court and jury, please.
>
> A Yes. Had Dr. Sipes made the diagnosis of twins in a timely manner that should have been made, then certain measures could have been taken to prevent the premature labor and delivery, as the Williams textbook stated as one of the aims of care in multiple pregnancy.

7

And I conclude here such things as bedrest, putting the patient to bed by at least the 30th week, reducing her activity accordingly. And these measures would at least have given her a chance at prolonging this pregnancy. Of course, with each day, with each week a pregnancy is prolonged in the premature area, the chances of the baby being healthier, [sic] surviving are increased.

At the close of Plaintiffs' case, Dr. Sipes moved to dismiss on the basis the Ehlingers failed to produce sufficient evidence from which the trier of fact could determine that Dr. Sipes' alleged negligence caused Kurt's and Cory's injuries. The circuit court granted the motion, concluding the Ehlingers failed to produce any evidence that had the multiple pregnancy been diagnosed by Dr. Sipes and proper treatment rendered, the injuries the twins suffered more probably than not would have been lessened or avoided. Dr. Nathanson's testimony was insufficient to establish causation, the circuit court reasoned, because Wisconsin law does not compensate for a mere "lost chance."

The Ehlingers appealed. The court of appeals, on the basis of sec. 323(a) Restatement (Second) of Torts, reversed and remanded the case for a new trial. Section 323(a) provides:

Negligent Performance of Undertaking to Render Services. One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm . . ..

8

The court of appeals concluded that Dr. Nathanson's testimony provided sufficient evidence from which the trier of fact could determine that Dr. Sipes' alleged negligence had "increased the risk" that the premature births and resulting injuries would occur. *Ehlinger,* 148 Wis. 2d at 268–69. The court of appeals held that the question of whether the increased risk was a substantial factor in causing Kurt's and Cory's injuries was then for the trier of fact to resolve. *Id.* at 269.

Dr. Sipes petitioned this court for review, which was granted. We conclude that the Ehlingers produced sufficient evidence to present to the trier of fact the question of whether Dr. Sipes' alleged negligence was a substantial factor in causing Kurt's and Cory's injuries. We disagree, however, with the court of appeals' interpretation of sec. 323(a). Thus, on the issue reviewed, we reach the same conclusion as the court of appeals, though on a different basis, and accordingly we affirm.

The "increased risk" theory the court of appeals followed in this case is one of several approaches jurisdictions have taken in attempting to address the causation problem presented here. *See generally* Perdue, *Recovery for a Lost Chance of Survival: When the Doctor Gambles, Who Puts Up the Stakes?,* 28 South Texas Law Review 37, 45–46 (1987); Andel, *Medical Malpractice: The Right to Recover for the Loss of a Chance of Survival,* 12 Pepperdine Law Review 973, 978 (1985).

Several jurisdictions have taken the approach that in order to present the causation question to the trier of fact, the plaintiff need only introduce evidence that the defendant's negligence deprived the plaintiff of a "substantial possibility" of avoiding or lessening the harm. *See, e.g., Roberson v. Counselman,* 235 Kan. 1006, 686 P.2d 149 (Kan. 1984); *Daniels v. Hadley Memorial Hospital,* 566 F.2d 749 (D.C. Cir. 1977); *Jeanes v. Milner,*

9

428 F.2d 598 (8th Cir. 1970); *Hicks v. United States,* 368 F.2d 626 (4th Cir. 1966). In *Roberson,* the court stated:

> The question of causation in cases involving negligent treatment of a potentially fatal condition . . . is generally a matter to be determined by the finder of fact where the evidence has established the patient had an appreciable chance to survive if given proper treatment. In making the determination, the finder of fact should take into account both the patient's chances of survival if properly treated and the extent to which the patient's chances of survival have been reduced by the claimed negligence.

*Roberson,* 686 P.2d at 159. In *Hicks,* the court stated the rationale for the "substantial possibility" approach as follows:

> If there was any substantial possibility of survival and the defendant has destroyed it, he is answerable. Rarely is it possible to demonstrate to an absolute certainty what would have happened in circumstances that the wrongdoer did not allow to come to pass. The law does not in the existing circumstances require the plaintiff to show to a *certainty* that the patient would have lived had she been hospitalized and operated on promptly.

*Hicks,* 368 F.2d at 632 (emphasis in original).

Other jurisdictions have viewed the loss of an opportunity for treatment as creating a new cause of action. *See, e.g., James v. United States,* 483 F. Supp. 581 (N.D. Cal. 1980). Damages are awarded in proportion to the likelihood of success that proper treatment would have had. This approach is supported by an oft-quoted commentator in the field. *See* King, *Causation, Valuation, and Chance in Personal Injury Torts Involv-*

10

*ing Preexisting Conditions and Future Consequences,* 90 Yale L.J. 1353 (1981).

A diminishing number of jurisdictions have taken an "all or nothing" approach. *See, e.g., Pillsbury-Flood v. Portsmouth Hospital,* 128 N.H. 299, 512 A.2d 1126 (1986); *Sherer v. James,* 290 S.C. 404, 351 S.E.2d 148 (1986); *Curry v. Summer,* 136 Ill. App. 3d 468, 483 N.E.2d 711 (Ill. App. 4 Dist. 1985); *Gooding v. University Hosp. Bldg., Inc.,* 445 So. 2d 1015 (Fla. 1984); *Cooper v. Sisters of Charity of Cincinnati, Inc.,* 27 Ohio St. 2d 242, 272 N.E.2d 97 (1971). Under the "all or nothing" approach, to establish causation the plaintiff must show that it is more probable than not that proper care by the defendant would have been successful in avoiding or lessening the plaintiff's harm. This was the approach followed by the circuit court in this case.

A number of jurisdictions have, like the court of appeals, applied sec. 323(a), but these jurisdictions have differed in their interpretations of how the "increased risk" theory applies to a case such as this. A minority of jurisdictions have interpreted sec. 323(a) as compensating for the lost opportunity for treatment itself. *See, e.g., McKellips v. Saint Francis Hosp., Inc.,* 741 P.2d 467 (Okla. 1987). Damages are awarded similar to the separate cause of action approach. The majority of jurisdictions, however, have interpreted sec. 323(a) as lessening the plaintiff's burden of proof on causation. *See, e.g., Evers v. Dollinger,* 95 N.J. 399, 471 A.2d 405 (1984); *Herskovits v. Group Health Co-op.,* 99 Wash. 2d 609, 664 P.2d 474 (1983); *Thompson v. Sun City Community Hosp., Inc.,* 141 Ariz. 597, 688 P.2d 605 (1984); *Jones v. Montefiore Hospital,* 494 Pa. 410, 431 A.2d 920 (1981); *Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280 (1978). Once the plaintiff shows that the defendant's negligence increased the risk that the plaintiff's injury would occur,

11

sec. 323(a) allows the trier of fact to determine whether the negligence was a substantial factor in causing the injury. This was the interpretation followed by the court of appeals here.

This court has previously approved of sec. 323(a). *See Sanem v. Home Ins. Co.,* 119 Wis. 2d 530, 350 N.W.2d 89 (1984). Even prior to *Sanem,* the duty described in sec. 323(a) had long been the common-law rule in Wisconsin. *See Johnson v. Misericordia Hosp.,* 97 Wis. 2d 521, 561, 294 N.W.2d 501 (Ct. App. 1980), *aff'd.,* 99 Wis. 2d 708, 301 N.W.2d 156 (1981). We disagree, however, with the court of appeals' interpretation of how sec. 323(a) applies to the circumstances in this case. Section 323(a) is generally viewed as relating only to the duty element of a negligence action. *See,* Perdue, 28 South Texas Law Review at 51 n.85; *see also Sherer,* 351 S.E.2d at 150–51; *Curry,* 483 N.E.2d at 717. Section 323(a) does not, as the court of appeals construed it to, lessen a plaintiff's burden of production on the issue of causation. The issue was unaddressed in *Sanem.*

We conclude that the evidence in this case was sufficient under current Wisconsin law to present the causation question to the trier of fact. To establish causation in Wisconsin, the plaintiff bears the burden of proving that the defendant's negligence was a substantial factor in causing the plaintiff's harm. *Merco Distg. Corp. v. Com'l. Police Alarm Co.,* 84 Wis. 2d 455, 458, 267 N.W.2d 652 (1978). "The phrase 'substantial factor' denotes that the defendant's conduct has such an effect in producing the harm as to lead the trier of fact, as a reasonable person, to regard it as a cause, using that word in the popular sense." *Id.* at 458–59. The test has been described as one of significance rather than quan-

12

tum. *See* Prosser, *Law of Torts,* sec. 41, at 240 n.29. " 'All that is required in negligence cases is for the plaintiff to present probable facts from which negligence and causal relations may be reasonably inferred.' " *Johnson,* 97 Wis. 2d at 564 (quoting *Purcell v. Zimbelman,* 18 Ariz. App. 75, 500 P.2d 335, 342 (1972)). One who negligently creates a dangerous condition may be held liable even though another cause is also a substantial factor in contributing to the result. *Johnson,* 97 Wis. 2d at 561. "There may be more than one substantial causative factor in any given case." *Merco,* 84 Wis. 2d at 459. The defendant's negligent conduct need not be the sole or primary factor in causing the plaintiff's harm. *Sumnicht v. Toyota Motor Sales,* 121 Wis. 2d 338, 351, 360 N.W.2d 2 (1984).

Dr. Sipes contends that in order to satisfy their burden of production on the issue of causation, the Ehlingers must show that had a proper diagnosis been made and appropriate treatment rendered, it is more probable than not Kurt and Cory would not have suffered their injuries or their injuries would have been less severe. To require anything less, Dr. Sipes asserts, would allow the issue of causation to be decided on mere speculation and conjecture. We disagree that to establish causation the Ehlingers must show that proper diagnosis and treatment *would* have been successful. We conclude that in a case of this nature, where the causal relationship between the defendant's alleged negligence and the plaintiff's harm can only be inferred by surmising as to what the plaintiff's condition would have been had the defendant exercised ordinary care, to satisfy his or her burden of production on causation, the plaintiff need only show that the omitted treatment was intended to prevent the very type of harm which resulted, that the

plaintiff would have submitted to the treatment, and that it is more probable than not the treatment *could* have lessened or avoided the plaintiff's injury had it been rendered. It then is for the trier of fact to determine whether the defendant's negligence was a substantial factor in causing the plaintiff's harm.

A physician is not an insurer or guarantor of the correctness of a diagnosis, but he or she must exercise proper care and skill. *Id.* at 338; *see also Francois v. Mokrohisky,* 67 Wis. 2d 196, 201, 226 N.W.2d 470 (1975); *DeSham v. Taugher,* 183 Wis. 446, 449, 198 N.W. 268 (1924). A negligent diagnosis followed by improper treatment is actionable where it is a substantial factor in causing the plaintiff's injury. *Carson v. Beloit,* 32 Wis. 2d 282, 291, 145 N.W.2d 112 (1966). Improper treatment includes the failure to warn a patient of the risks associated with a condition and the failure to advise the patient as to appropriate conduct. *Schuster v. Altenberg,* 144 Wis. 2d 223, 230, 424 N.W.2d 159 (1988).

Causation is a question of fact. *Merco,* 84 Wis. 2d at 459. A motion to dismiss for insufficiency of the evidence should not be granted "unless there is no credible evidence to support a finding for the plaintiff when all credible evidence and reasonable inferences therefrom are considered in the light most favorable to the plaintiff." *Christianson v. Downs,* 90 Wis. 2d 332, 334–35, 279 N.W.2d 918 (1979). Although this court has often considered cases involving a physician's allegedly negligent misdiagnosis, it has seldom addressed the issue of the sufficiency of the evidence necessary to establish causation in such circumstances.

14

In several decisions, this court affirmed dismissal of the plaintiff's action on the basis the plaintiff made no showing that the defendant failed to conform to the appropriate standard of care. *See, e.g., Christianson,* 90 Wis. 2d at 337; *Carson,* 32 Wis. 2d at 291-93.

In *Bailey v. Sturm,* 59 Wis. 2d 87, 207 N.W.2d 653 (1973), and *Dettmann v. Flanary,* 86 Wis. 2d 728, 273 N.W.2d 348 (1979), this court considered the sufficiency of the evidence on causation, but affirmed dismissal of the plaintiff's cases on grounds other than that at issue here.

In *Bailey,* the plaintiff alleged Dr. Pitts' failure to timely operate upon her eye condition resulted in her losing sight in one eye. The plaintiff's expert testified that had an operation been performed on December 10, 1966, there was "a good chance that her eyesight may have been saved," although there was "no guarantee that that would [have] save[d] the eye . . ." This court did not reach the issue of the sufficiency of the evidence on the causation, however, because it had been established at trial that the plaintiff's sight had been irretrievably lost *before* she first consulted with Dr. Pitts on December 11, 1966. *Id.* at 97.

In *Dettmann,* the plaintiff suffered from cancer and brought suit alleging the defendant had negligently failed to diagnose a mass in the upper and outer area of her right breast, away from the areola. In a subsequent examination, a cancerous mass was diagnosed in the areola area of the same breast. Despite the plaintiff's claim that the masses were the same, all of the medical experts who testified were in agreement that there existed two separate masses. This court held the plaintiff failed to establish a causal relationship between the defendant's alleged negligence in the first examination and her injury because the plaintiff failed to produce *any* credible evi-

15

dence that the mass in the upper right of her breast was the same as that which proved cancerous. *Id.* at 741. Thus, there was no evidence that the defendant's alleged negligence had any causal relationship whatsoever to the plaintiff's harm. *Compare Merco,* 84 Wis. 2d at 460–61.

In only two failure to diagnose cases, *Schuster* and *Dumer v. St. Michael's Hosp.,* 69 Wis. 2d 766, 233 N.W.2d 372 (1975), did this court address the specific causation question at issue here.

In *Schuster,* Mrs. Schuster was under the psychiatric care of the defendant. During the course of her care, Mrs. Schuster was fatally injured in an automobile accident in which she was the driver. Mrs. Schuster's daughter, one of the plaintiffs, was a passenger in the automobile and as a result of the accident was paralyzed. The plaintiffs alleged the defendant negligently failed to diagnose Mrs. Schuster's psychotic condition and take appropriate action, including seeking commitment, administering proper medication, and warning the Schuster family of the risks associated with Mrs. Schuster's condition. The plaintiffs further alleged that the defendant's negligence was a substantial factor in causing the automobile accident. The circuit court dismissed the complaint. This court reversed and held the plaintiffs' complaint stated a cause of action for negligent diagnosis and treatment, stating:

> The only distinction between the allegations of negligent treatment and diagnosis in the present case and those which constitute most malpractice claims is the type of harm which resulted. However, a negligent failure to diagnose or properly treat a psychiatric condition may constitute the cause-in-fact of harm to the patient and third parties if it can be established that with proper diagnosis and treatment the

16

> patient's condition and behavior *could* have been corrected or controlled.

*Id.* at 230 (emphasis added). This court held that whether the defendant was negligent in diagnosing and treating Mrs. Schuster's condition and whether the alleged negligence was a substantial factor in causing the plaintiffs' injuries were questions for the trier of fact to resolve. *Id.* at 231.

More closely analogous is *Dumer.* In *Dumer,* Mrs. Dumer sought treatment from the defendants for a rash. The defendants misdiagnosed the condition as an allergic reaction. At the time Mrs. Dumer was approximately one month pregnant. The condition later proved to be rubella and when born, Mrs. Dumer's child suffered from rubella syndrome. Mrs. Dumer brought suit seeking damages for the costs sustained because of the deformity and defects of the child. Mrs. Dumer alleged the defendants had negligently failed to diagnose the rubella and warn her of the disease's possible effects upon her pregnancy. In her complaint, Mrs. Dumer stated that had she been so informed, she would have sought an abortion to prevent the birth. The circuit court dismissed the complaint. This court reversed, reasoning that sufficient facts had been alleged to conclude the defendants were negligent in not diagnosing the rubella, inquiring as to whether Mrs. Dumer was pregnant, and warning her of the possible effects of the disease upon a pregnancy. *Id.* at 776. This court further stated that "[t]o complete a cause of action the plaintiffs must then convince the trier of fact that they would have sought and submitted to an abortion of the wife and that the abortion [would have been] legally available to them." *Id.*

*Schuster* and *Dumer* are distinguishable from the case here in one respect. In each case, part of the omitted treatment, psychiatric commitment in *Schuster* and an

17

abortion in *Dumer,* was of such a nature that its success, if instituted, was a matter of reasonable certainty. But in neither case was the success of the omitted treatment considered necessary to the plaintiffs' burden of production on causation. In a case such as presented here, where given the natures of the malady and omitted treatment the success of the treatment if instituted is not a matter of reasonable certainty, we refuse to place upon an injured plaintiff the burden of proving what more probably than not *would* have happened had the defendant not been negligent. While the plaintiff's burden to present the causation question to the trier of fact is less than otherwise required, and to that extent does involve some measure of uncertainty, the courts have generally been liberal in allowing the trier of fact to determine whether the defendant's negligence caused the plaintiff's injury in such circumstances. *See Prosser,* sec. 41, at 242–43; *see also Hicks,* 368 F.2d at 632 n.3 (". . . if the victim *might* have been saved by a precaution which the defendant negligently omitted, the omission is deemed to have caused the harm, even though it is not possible to demonstrate conclusively that the precaution would in fact have saved the victim."). Greater uncertainty would be involved if an expert were required to testify as to what more probably than not would have happened had the defendant rendered appropriate care. *See Herskovits,* 664 P.2d at 478. We find the rule previously stated in the products liability context that "[t]he law of this state has never required a plaintiff to prove the negative fact of what the injuries would have been had there been no defect" equally applicable here. *Sumnicht,* 121 Wis. 2d at 357.

> 'A rule of law which requires a plaintiff to prove what portion of indivisible harm was caused by each party and what might have happened in lieu of what did

18

happen requires obvious speculation and proof of the impossible. This approach converts the common law rules governing principles of legal causation into a morass of confusion and uncertainty.'

*Id.* at 356 (quoting *Mitchell v. Volkswagenwerk,* 669 F.2d 1199, 1204–05 (8th Cir. 1982). The difficulties involved in proving a negative fact are especially prevalent in a medical malpractice case involving a physician's misdiagnosis. The medical profession is not an exact science and its members are not subject to liability for mere unfavorable results. *See Francois,* 67 Wis. 2d at 201–02. Physicians are not insurers or guarantors of their work. *See id.* Yet to require a plaintiff in a case of this type to prove what more probably than not *would* have happened had the defendant not been negligent would require just that, expert testimony by a physician speculating as to the success of a particular treatment, a fact which inherently is incapable of proof to a reasonable certainty. "When a defendant's negligent action or inaction has effectively terminated a person's chance of survival, it does not lie in the defendant's mouth to raise conjectures as to the measure of the chances that he has put beyond the possibility of realization." *Hicks,* 368 F.2d at 632; *see also McKellips,* 741 P.2d at 474.

Dr. Sipes contends that the evidence here fails for the same reason as the plaintiff's evidence in *Merco.* We do not find *Merco* a bar to the Ehlingers' case. In *Merco,* the plaintiff's case was dismissed for insufficiency of the evidence because the plaintiff failed to prove when the burglary occurred, a positive fact. *Merco,* 84 Wis. 2d at 460. Here, the alleged failure in proof is the Ehlingers' inability to prove a negative fact. More importantly, in *Merco,* absent proof of when the burglary occurred, there was no basis from which the trier of fact could

19

infer that it was more probable than not that the defendant's negligence had any causal relationship whatsoever to the plaintiff's harm. *Id.* at 460–61. In a case such as presented here, we conclude that by showing that the omitted treatment was intended to prevent the very harm which resulted, that the plaintiff would have submitted to the treatment, and that the treatment *could* have lessened or avoided the harm, the plaintiff establishes a sufficient nexus between the alleged negligence and harm to allow the trier of fact to determine whether the alleged negligence was a substantial factor in causing the harm.

The court of appeals has twice considered cases addressing the sufficiency of the evidence on causation in circumstances similar to that presented here.

In *Gegan v. Backwinkel,* 141 Wis. 2d 893, 417 N.W.2d 44 (Ct. App. 1987), the plaintiffs brought suit alleging the defendants had negligently failed to diagnose and treat Mr. Gegan's perforated bowel, a condition which resulted in his death. Two physicians testified on the plaintiffs' behalf that the defendants' negligence was a substantial factor in causing Mr. Gegan's death. The jury found the defendants causally negligent. The defendants appealed, contending there was no evidence to a reasonable degree of medical certainty that the defendants' negligence caused Mr. Gegan's death. The court of appeals affirmed on the basis there was credible evidence which supported the jury's verdict. *Id.* at 899. The court of appeals was not required to address the precise question here, however, what measure of evidence is required for the plaintiff to satisfy his or her burden of production on causation in order to present the issue to the trier of fact, because there was expert testimony that had Mr. Gegan received proper care the

likelihood that he would have survived was better than ninety percent.

In *Finn v. Schammel,* 140 Wis. 2d 763, 412 N.W.2d 147 (Ct. App. 1987), the plaintiff alleged the defendant negligently failed to do certain acts necessary for the reimplantation of several fingers the plaintiff severed in a work accident. The defendant contended that the fingers had been so badly damaged that whether the defendant had been negligent was irrelevant. A special instruction asked the jury whether they believed to a reasonable certainty that reimplantation of one or more of the plaintiff's fingers would have been successful. The jury found the defendant negligent but answered the special instruction "No." The circuit court struck the special instruction answer and directed a verdict for the plaintiff, reasoning the plaintiff was entitled to damages irrespective of whether reimplantation would have been successful. The court of appeals reversed, stating that the "loss of a chance" alone is not compensable in Wisconsin. The court of appeals viewed Wisconsin law as adhering to the "all or nothing" approach. *Id.* at 771–74. The court of appeals interpreted this court's decisions in *Bailey* and *Lobermeier v. General Tel. Co. of Wisconsin,* 119 Wis. 2d 129, 349 N.W.2d 466 (1984), as establishing that "if the plaintiff cannot prove to a reasonable certainty that success would have resulted but for the defendant's negligence, the plaintiff recovers nothing rather than recovering the value of the lost chance, whether [it be] a 10% chance or a 95% chance." *Finn,* 140 Wis. 2d at 771–72.

We disagree with the court of appeals' interpretations of *Bailey* and *Lobermeier,* and over-rule *Finn.* Neither *Bailey* nor *Lobermeier* stand for the rule that in a case of this nature a plaintiff must establish that the omitted treatment more probably than not *would* have

21

been successful in avoiding or lessening the plaintiff's injuries. In *Bailey,* the plaintiff was denied recovery because it was uncontroverted that the plaintiff had already irretrievably lost the sight in her eye *before* she was allegedly negligently treated by the defendant. *Bailey,* 59 Wis. 2d at 97–98. Thus, proper care by the defendant *could not* have been successful. *Lobermeier* is distinguishable because there the plaintiff sought recovery for harm other than that which proper care by the defendant was intended to prevent. In *Lobermeier,* the plaintiff sustained a hearing loss as a result of the defendant's negligence. The plaintiff further alleged that the defendant's negligence deprived him of the opportunity to pursue a career in journalism and he sought to recover future earnings. This court denied recovery on the basis the damages were wholly speculative, holding that recovery could only be had if the plaintiff proved a career in journalism was reasonably certain. *Lobermeier,* 119 Wis. 2d at 152.

We disagree with the court of appeals' conclusion in *Finn* that in a case of this nature Wisconsin law follows the "all or nothing" approach. In a case such as this, the plaintiff need not show that proper treatment more probably than not *would* have been successful in lessening or avoiding the plaintiff's injuries as a prerequisite to satisfying his or her burden of production on the issue of causation. In addition to the other requirements previously noted, all that is required is that the plaintiff establish that proper treatment *could* have lessened or avoided the plaintiff's harm. *Compare Hicks,* 368 F.2d at 632. The trier of fact may consider evidence of the likelihood of success of proper treatment in determining whether the negligence was a substantial factor in causing the harm, and may yet conclude that it was not

22

because the injuries would have occurred irrespective of the negligence. *See* Restatement (Second) of Torts, sec. 432 and comment b to that section. If the defendant's negligence is found to have been a substantial factor in causing the harm, the trier of fact may also consider evidence of the likelihood of success of proper treatment in determining the amount of damages to be awarded.

*By the Court.*—The decision of the court of appeals is affirmed; and cause remanded for a new trial.

STEINMETZ, J. (concurring). I agree with the majority that the case should be remanded for a new trial. I write to clarify the law as I interpret it.

The trial court was in error to hold that the plaintiff, Carol Ehlinger, had to prove that proper treatment and care, which was not given to her as a result of Dr. Sipes' conceded failure to diagnose she was pregnant with twins, would have worked to avoid the children's conditions. The plaintiff does not have to prove the result would have been different if non-negligent care had been provided.

Under the substantial factor test, a showing that proper medical care was not provided is sufficient proof that the negligent conduct increased the risk and deprived the patient of the opportunity for continuing the pregnancy.

The issue is one of a normal substantial factor. The plaintiff does not have to prove the ratio of success of the absent care. The lost opportunity line of proof should be considered as constituting sufficient proof to create a jury issue under the substantial factor theory of causation.

I concur with the majority.