214 Wis.2d 397 (1997)
571 N.W.2d 189
SCHOOL BOARD OF THE PARDEEVILLE AREA SCHOOL DISTRICT, Plaintiff-Appellant-Cross Respondent,
v.
Cynthia V. BOMBER, Defendant-Respondent-Cross Appellant.
No. 97-1469-FT.
Court of Appeals of Wisconsin.
Submitted on briefs August 15, 1997.
Decided October 23, 1997.
*399 On behalf of the plaintiff-appellant-cross respondent, the cause was submitted on the briefs of Tina C. Melvin of Kammer Law Office, Chartered of Portage.
On behalf of the defendant-respondent-cross appellant, the cause was submitted on the brief of Dona J. Merg of Merg & Anderson, S.C. of Madison.
Amicus Curiae brief was filed by Stephen A. DiTullio of DeWitt Ross & Stevens, S.C. of Madison for the Association of Wisconsin School Administrators and Wisconsin Association of School District Administrators.
Before Dykman, P.J., Vergeront and Deininger, JJ.
DEININGER, J.
The School Board of the Pardeeville Area School District appeals an order awarding attorney fees to a former high school principal, Cynthia Bomber, under § 895.46(1), STATS.[1] *400 Bomber cross-appeals the amount of attorney fees awarded, which was less than the amount she claimed due her. Because we conclude that the Board did not sue Bomber either in her official capacity or as an individual because of acts committed while carrying out her duties as a school principal, we conclude that § 895.46(1) does not apply to this action. Therefore, we reverse the order awarding attorney fees to Bomber.

BACKGROUND
The School Board of the Pardeeville Area School District hired Cynthia Bomber in July 1992 as the District's junior/senior high school principal. Her employment contract was renewed on February 10, 1994, for the period July 1, 1994, through July 1, 1996. The contract granted Bomber two weeks of paid vacation for each school year beginning July 1 and ending June 30, and provided that "[v]acation time shall not be cumulative unless otherwise noted in the special provisions section of this contract." The renewal contract signed February 10, 1994, contains no "special provisions section," but it does include a statement that "[t]he scheduling of vacation time shall be [in] accordance with policies of the board."
In the summer of 1992 and again in 1993, the district administrator asked Bomber to forego a week's earned vacation to attend a workshop on behalf of the school district. Bomber agreed and was allegedly told that she could accumulate the two weeks of unused vacation time. In late June 1994, when there was no acting administrator in the Pardeeville School District, Bomber called the president of the Board about her *401 vacation. The Board president checked with the district bookkeeper and determined that Bomber had four weeks of vacation due her, which included the two weeks of accumulated vacation from the previous two summers.
In July, Bomber took her two weeks of vacation for 1994 plus the two weeks of accumulated vacation time. During this four-week paid vacation from her Pardeeville position, Bomber applied for a teaching position in the Mauston School District. She was notified on August 1, 1994, that she would be hired in Mauston if she could be released from the Pardeeville contract. On August 5, 1994, Bomber submitted her resignation to the Board and received her last paycheck. Bomber was paid in full for the four weeks of vacation she took during July 1994.
Bomber's employment contract with the Board required Bomber to pay a $500 penalty for an early release from her contract. Bomber paid the Board only $315, after deducting $185 for "unused sick leave." The contract of February 10, 1994, is silent as to whether Bomber could deduct amounts for unused sick leave from the $500 penalty.
The Board sued Bomber to recover two weeks of vacation pay and the $185 sick leave offset against the early release penalty, claiming that Bomber's contract did not allow for either. Bomber defended on the basis that, per verbal authorizations, she had permission to use accumulated vacation time and to receive credit for unused sick days. Bomber counterclaimed, under § 895.46(1), STATS., for her attorney fees and costs in defending the action.[2]
*402 The Board moved for summary judgment on its contract claims. The parties stipulated to certain facts, and the trial court addressed two issues: (1) whether Bomber had breached her employment contract; and (2) whether Bomber was entitled to an award of her legal fees and costs under § 895.46(1), STATS. The trial court concluded that Bomber's employment contract was modified orally by mutual consent, that such modification had been reduced to writing, and that the terms of the modified contract authorized her to take accumulated vacation time and credit for her unused sick leave. Subsequently, the court ordered the Board to pay Bomber $3,000 for her attorney fees and $75.06 for disbursements. The Board appeals the order awarding attorney fees and disbursements. Bomber cross-appeals the trial court's reduction of the attorney fees and disbursements from the $5,240.06 she requested. Bomber also seeks an award for her costs and attorney fees incurred in this appeal.

ANALYSIS
[1]
The interpretation and application of a statute to undisputed facts is a question of law which we review de novo, owing no deference to the trial court's determination. Sievert v. American Family Mut. Ins. Co., 190 Wis. 2d 623, 628, 528 N.W.2d 413, 415 (1995).
[2]
The supreme court has explained that a two-part analysis is required to determine whether a political subdivision of the State must reimburse an employee for litigation costs under § 895.46(1), STATS. "First, the *403 defendant must be a public officer or employee proceeded against in his official capacity, or as an individual because of acts committed while carrying out his duties as a public officer [or employee]. Second, it must not be found by the court or jury that the officer or employe acted beyond the scope of his employment." Thuermer v. Village of Mishicot, 95 Wis. 2d 267, 272-73, 290 N.W.2d 689, 692 (1980). We conclude that Bomber's claim for reimbursement for her litigation expenses in this action fails to satisfy the first criterion.
The Board did not sue Bomber in her official capacity. A suit against a public officer or employee in his or her official capacity "`generally represent[s] only another way of pleading an action against an entity of which an officer [or employee] is an agent.'" Kentucky v. Graham, 473 U.S. 159, 165 (1985) (quoted source omitted). At the time the Board commenced this suit, Bomber was no longer an employee of the District. Section 803.10(4), STATS., provides that when a public officer who is a party to an action in an official capacity ceases to hold the office, his or her successor in office is automatically substituted as a party. The Board clearly was not suing itself, nor was it suing "The Pardeeville Junior/Senior High School Principal." Rather, the Board sued Cynthia Bomber, as an individual, for her alleged breach of her employment contract with the Board.
Whether the Board's suit against Bomber, individually, was because of acts she committed while carrying out her duties as a public employee is perhaps a closer question. Bomber and the amicus curaie argue that the suit does involve Bomber's duties as a public employee. They largely frame the argument in terms of "scope of employment," an issue we have not yet reached. The gravamen of that argument applies here, *404 however: The trial court determined Bomber did not breach her employment contract, and therefore, she argues, her actions in taking accumulated vacation and an offset for unused sick leave were acts committed while carrying out her duties under her contract with the Board. In particular, Bomber claims she accumulated vacation time while furthering the District's interests by attending workshops at the superintendent's request.
We are not persuaded, however, that the subject matter of the Board's lawsuit can be characterized as Bomber's "acts committed while carrying out duties as an officer or employee." Section 845.46(1)(a), STATS. Bomber was not sued in lieu of the Board, or in conjunction with the Board because of work done for the benefit of the Board. In defending this suit, Bomber was defending her personal right to keep monies she claimed properly due her under her employment contract with the Board. Thus, Bomber sought to protect her own interests, not those of the Board. There could be only one winner, either Bomber or the Board. This conflicts with the public policy underlying § 895.46(1), which, as we explained in Crawford v. City of Ashland, 134 Wis. 2d 369, 377, 396 N.W.2d 781, 784 (Ct. App. 1986), is the indemnification of "public employees from the cost of actions brought against them that are based upon acts performed ... for a governmental unit's benefit."
Our conclusion that the Board's suit against Bomber does not satisfy the first criterion for the application of § 895.46(1), STATS., is consistent with the holding in Thuermer v. Village of Mishicot, 95 Wis. 2d 267, 290 N.W.2d 689 (1980). In Thuermer, a taxpayer's suit had been filed against a municipal judge who had allegedly failed to fulfill the requirements necessary to *405 qualify for his position. Id. at 269-70, 290 N.W.2d at 690. The suit sought to compel the judge to return the salary he had received from the municipality while he was allegedly not qualified to act. Id. at 270, 290 N.W.2d at 690-91. The municipal judge prevailed in the taxpayer's suit and subsequently sought, under § 895.46(1), to have the Village of Mishicot pay the attorney fees he incurred in defending against the taxpayer action. Id. at 270-71, 290 N.W.2d at 691. The supreme court concluded: "The receipt and retention of a public officer's salary is not an official act required of him. While a public officer's right to receive and retain his salary may be dependent upon his carrying out the duties of his office, it is not itself a duty of that office." Id. at 273, 290 N.W.2d at 692. This rationale supports our conclusion that Bomber's right to receive and retain pay for vacation and sick leave, which she defended in this action, is not a "duty" of her employment by the Board.
Since Bomber's claim for reimbursement fails the threshold inquiry for application of the statute, "it is unnecessary to examine the second criterion, that related to whether the act was done within the scope of employment." Id. at 274, 290 N.W.2d at 692. Bomber and amicus curaie also argue, however, that a conclusion that § 895.46(1), STATS., is inapplicable to this action is contrary to the supreme court's direction that the statute is to be interpreted so as to provide "the broadest protection reasonably available to public officials and to public employees." Schroeder v. Schoessow, 108 Wis. 2d 49, 67, 321 N.W.2d 131, 140 (1982). This court has acknowledged that legislative intent, see Crawford, 134 Wis. 2d at 373-74, 396 N.W.2d at 783, but we conclude that even a liberal interpretation of *406 the statutory language does not support its application to this case.
[3]
At issue is the interpretation of the following language from § 895.46(1)(a), STATS.:
If the defendant in any action or special proceeding is a public officer or employe and is proceeded against in an official capacity or is proceeded against as an individual because of acts committed while carrying out duties as an officer or employe and the jury or the court finds that the defendant was acting within the scope of employment, the judgment as to damages and costs entered against the officer or employe ... shall be paid by the state or political subdivision of which the defendant is an officer or employe.... Regardless of the results of the litigation the governmental unit ... shall pay reasonable attorney fees and costs of defending the action, unless it is found by the court or jury that the defendant officer or employe did not act within the scope of employment.
The Wisconsin Supreme Court has interpreted this language to mandate the payment of attorney fees and costs in only "one class of cases ... made up of those cases where the governmental unit is absolutely liable under sec. [895.46(1), STATS.] for the payment of any judgment rendered against the officer." Bablitch & Bablitch v. Lincoln County, 82 Wis. 2d 574, 584, 263 N.W.2d 218, 224 (1978).[3]
Thus, in order for the Board to be liable for Bomber's attorney fees and costs under § 895.46(1), STATS., we would have to conclude that the Board *407 "would have been absolutely liable had a judgment been rendered against" Bomber in this action. Thuermer, 95 Wis. 2d at 272, 290 N.W.2d at 691. It would be nonsensical to hold the Board liable for payment of a judgment in its own favor entered against Bomber, but that would seem to be a necessary implication of the application of the statute to this case. The reading of the statute urged by Bomber and the amicus curaie would thus essentially immunize public employees against suits brought by their employers.[4] We reject such an interpretation because we cannot read § 895.46(1) in a way that reaches absurd results. Walag v. Town of Bloomfield, 171 Wis. 2d 659, 663, 492 N.W.2d 342, 344 (Ct. App. 1992).

CONCLUSION
[4]
Because Bomber was not sued in her official capacity or individually for acts committed while carrying out the duties of her office, the payment of her attorney *408 fees and costs by the Board is not mandated under § 895.46(1), STATS. Even a liberal interpretation of the statute cannot support its application to the facts of this case. We do not reach the issue raised by the cross-appeal since we conclude that Bomber was not entitled to reimbursement for attorney fees in any amount under § 895.46(1).
By the Court.Order reversed.
DYKMAN, P.J. (dissenting).
Section 895.46(1)(a), STATS., requires a governmental unit, here a school board, to pay attorney fees for an employee who is sued as a result of something the employee did or did not do. There is a qualification, however. The suit must be "because of acts committed while carrying out duties as an officer or employe" and the judge or jury must find that "the defendant was acting within the scope of employment." Id. Therefore, the first question we must ask is: "Why did Cynthia Bomber get sued?" The majority and I answer that question differently. I believe that the trouble began when the school board asked Ms. Bomber to forego a week's earned vacation to attend a workshop on behalf of the school district. The majority focuses on later events. But the statute reads: "proceeded against ... because of acts committed while carrying out duties as an ... employe." (Emphasis added.) I believe that we therefore must inquire as to whether this lawsuit was caused because of acts Ms. Bomber committed while carrying out her duties as a school district principal.
Had Ms. Bomber not been asked to forego two weeks' vacation to attend the two workshops, or had she not agreed to do so, this case would not have arisen. She would not have been told that she could accumulate *409 two weeks of unused vacation time to compensate her for the two weeks she spent attending to the school district's business. But she did what she was asked to do, and that, not the dispute as to the accounting for her vacation time, is a cause of this lawsuit.
The question of causation is one of fact. Estate of Cavanaugh v. Andrade, 202 Wis. 2d 290, 306, 550 N.W.2d 103, 110 (1996). But the definition of causation is one of law. Cf. Kallas Millwork Corp. v. Square D Co., 66 Wis. 2d 382, 386, 225 N.W.2d 454, 456 (1975). Questions of causation usually arise in negligence and criminal cases, but there is no reason to depart from Wisconsin's unique view of causation in a case not involving negligence or crime. The Wisconsin test for determining causation is whether the conduct at issue was a substantial factor in producing the plaintiff's harm. Cavanaugh, 202 Wis. 2d at 306, 550 N.W.2d at 110. There may be more than one cause of an injury. Ehlinger v. Sipes, 155 Wis. 2d 1, 13, 454 N.W.2d 754, 758-59 (1990).
The school board views Ms. Bomber's payment of only $315 to satisfy her obligation to it as the cause of its injury and this lawsuit. That view was rejected by the trial court. More importantly, that view fails to consider whether this lawsuit would have occurred had the school district and Ms. Bomber not agreed that she could accumulate vacation time to compensate her for attending two conferences. Ms. Bomber's undisputed affidavit reads: "Mr. Keenan [Ms. Bomber's supervisor] represented to me that if I would attend these workshops within the scope of my employment, that the vacation time for 1992 and 1993 would be accumulated."
In order to arrive at its conclusion, the majority must conclude that the school district's agreement with *410 Ms. Bomber was not a substantial factor in causing this lawsuit. "Substantial factor" means that "the defendant's conduct has such an effect in producing the harm as to lead the trier of fact, as a reasonable person, to regard it as a cause, using that word in the popular sense." Ehlinger, 155 Wis. 2d at 12, 454 N.W.2d at 758 (quoting Merco Distrib. Corp. v. Commercial Police Alarm Co., 84 Wis. 2d 455, 458-59, 267 N.W.2d 652, 654 (1978)). Here, the trial court determined that the agreement made by Ms. Bomber and Mr. Keenan modified the contract between Ms. Bomber and the school district. I believe that a reasonable person, here, the trial judge, could conclude that this agreement was a substantial factor in producing this lawsuit. It might not have been the only factor, but it certainly was a factor. It is not reasonable to conclude that this lawsuit would have occurred had the agreement not been made.
The school district does not dispute that attending the workshop was one of Ms. Bomber's duties or contend that doing so was outside the scope of her employment. Thus, this lawsuit arose, at least in part, "because of acts committed while carrying out duties as an ... employe." Section 895.46(1)(a), STATS. That statute does not exempt from its application lawsuits brought by an employee's employer. Accordingly, I would affirm the trial court's decision to award attorney's fees and costs to Ms. Bomber. Because I would affirm that decision, the question posed by Ms. Bomber's cross-appeal arises: Did the trial court err by awarding her only $3,000 of the $5,240 billed to her by her attorney? The trial court found that the additional $2,240 was not necessary because the amount in dispute was small. I conclude that unnecessary attorney's services are not reasonable. Section 895.46(1)(a) *411 requires only the payment of reasonable attorney fees. Although it makes little difference in a dissent, I would defer to the trial court's determination as to the necessity of the $2,240 in attorney's fees and affirm that determination.
NOTES
[1] Section 895.46(1)(a), STATS., states in pertinent part as follows:

895.46 State and political subdivisions thereof to pay judgments taken against officers. (1)(a) (a) If the defendant in any action or special proceeding is a public officer or employe and is proceeded against in an official capacity or is proceeded against as an individual because of acts committed while carrying out duties as an officer or employe and the jury or the court finds that the defendant was acting within the scope of employment, the judgment as to damages and costs entered against the officer or employe in excess of any insurance applicable to the officer or employe shall be paid by the state or political subdivision of which the defendant is an officer or employe. . .. Regardless of the results of the litigation the governmental unit, if it does not provide legal counsel to the defendant officer or employe, shall pay reasonable attorney fees and costs of defending the action, unless it is found by the court or jury that the defendant officer or employe did not act within the scope of employment.
[2] Bomber also counterclaimed for her fees and costs under § 814.025, STATS., the frivolous action statute, but subsequently "waived" this claim prior to the trial court's summary judgment ruling.
[3] In Bablitch & Bablitch v. Lincoln County, 82 Wis. 2d 574, 263 N.W.2d 218 (1978), the court was interpreting § 270.58(1), STATS., 1973-74, which is now § 895.46(1), STATS.
[4] Of course, if the trial court had determined that Bomber had breached the employment contract, that would have been tantamount, under the rationale of Bomber's arguments to this court, to a finding that she had not acted within the scope of her employment. Thus, § 895.46(1), STATS., would not apply if the Board had prevailed, leaving Bomber solely liable for both the judgment and her litigation costs. Bomber's interpretation of the statute could also, therefore, be characterized as converting § 895.46 to a type of fee-shifting statute for employment contract actions commenced by governmental units against public employees: if the employee successfully defends, the losing governmental unit must pay the employee's fees and costs. We conclude, however, that such a legislative intent is not ascertainable from the plain language of § 895.46(1), and the interpretation is, therefore, equally untenable.