2004 WY 44

Leslie McMACKIN, Personal Representative of the Estate of Harriette R. Brown, Appellant (Plaintiff),

v.

JOHNSON COUNTY HEALTHCARE CENTER, a Wyoming hospital district; Mark S. Schueler, M.D.; Lawrence E. Kirven, M.D.; Medical Associates of Johnson County, P.C.; Jennifer Sather, R.N.; and Vicki Blakely, L.P.N., Appellees (Defendants).

No. 01–214.

Supreme Court of Wyoming.

April 22, 2004.

Representing Appellant: Don W. Riske and James R. Salisbury of Riske & Arnold, P.C., Cheyenne, WY. Argument by Mr. Riske.

Representing Appellees: Michael K. Davis of Yonkee & Toner, Sheridan, WY for Johnson County Healthcare Center, Sather, and Blakely; George E. Powers, Jr. of Sundahl, Powers, Kapp & Martin, Cheyenne, WY for

Dr. Schueler; Jeffrey C. Brinkerhoff and Mistee L. Godwin of Brown, Drew & Massey, LLP, Casper, WY for Dr. Kirven and Medical Associates of Johnson County. Argument by Mr. Brinkerhoff.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

HILL, Chief Justice.

[¶ 1] We previously reversed the district court's order granting summary judgment in favor of Appellees, Johnson County Healthcare Center (JCHC), Mark Schueler, M.D. (Dr. Schueler), Lawrence E. Kirven, M.D. (Dr. Kirven), Jennifer Sather, R.N. (Nurse Sather), and Vicki Blakely, L.P.N. (Nurse Blakely). We determined that there were genuine issues of material fact precluding summary judgment and in doing so, we recognized what is known as the "loss of chance doctrine." *McMackin v. Johnson County Healthcare Center*, 2003 WY 91, 73 P.3d 1094 (Wyo.2003). The facts of this case are set out in that opinion.

## ISSUE

[¶ 2] JCHC, Drs. Schueler and Kirven, and Nurses Sather and Blakely filed a petition for rehearing. By order entered on September 4, 2003, we granted that petition for rehearing in part. The subject of the rehearing was limited to this issue:

> This Court erroneously adopted the "loss of chance" doctrine in this wrongful death action which is governed by statutes permitting recovery only for an actual death proximately caused by fault and the adoption of this doctrine improperly constitutes a waiver of sovereign immunity which only the legislature can grant.

Our discussion will be strictly limited to that somewhat compound issue. We will, in essence, sustain our original decision and provide some further guidance to the parties and the district court. An outline of the resolution we will embrace is well articulated by McMackin's summary of her argument:

> 1. Under the approach to the loss of chance doctrine adopted by this Court in *McMackin*, as more fully described in *McKellips v. Saint Francis Hospital, Inc.*,

741 P.2d 467, 474–77 (Okla.1987), *Alberts v. Schultz*, [1999–NMSC–015, ¶¶ 10–33, 975 P.2d 1279, ¶¶ 10–33 (NM 1999)], and other authorities referred to in its opinion, the patient's ultimate death, and not the lost chance itself, is the relevant harm when determining proximate cause.

> 2. Since the patient's ultimate death, and not the lost chance itself, is the relevant harm under the loss of chance doctrine adopted by this Court (in those cases where death results from the lost chance), Appellant's claims against Appellees are within the actions permitted under the Wyoming Wrongful Death statute, [Wyo. Stat. Ann. § 1–38–101 (LexisNexis 2003)] and the Wyoming Governmental Claims Act, Wyo. Stat. Ann. §§ 1–39–109 and 110 (LexisNexis 2003).

> 3. A majority of other states have adopted the loss of chance doctrine; such states have wrongful death statutes identical or similar to Wyoming's Wrongful Death statute, ... and such states have considered and rejected the arguments against such adoption urged by Appellees herein.

> 4. The "pure form" of the loss of chance doctrine, which recognizes a lost chance of survival as an injury apart from death, is distinct from the loss of chance doctrine adopted by this Court that only affects the quantum of proof needed to establish proximate cause in wrongful death cases alleging medical malpractice.

> 5. Application of the loss of chance doctrine in this case does not place Appellant's claims outside of the immunity waiver of [Wyo. Stat. Ann. §§ 1–39–109 and 110].

## STANDARD OF REVIEW

[¶ 3] A petition for rehearing is granted to address an assertion that this Court has erred in its resolution of the case. W.R.A.P. 9.07. The office of rehearing is to point out and have considered mistakes or errors of law or of fact, or both, which it is claimed the court has made in reaching its conclusion, or to present to the court and have considered some point which it overlooked or failed to consider, by reason whereof its decision is

alleged to be erroneous. 5 C.J.S. *Appeal and Error* § 676 (1993); *Elmer v. State*, 466 P.2d 375, 376 (Wyo.1970), *cert. denied*, 400 U.S. 845, 91 S.Ct. 90, 27 L.Ed.2d 82 (1970).

## DISCUSSION

### Application of Wrongful Death Statute

[¶ 4] The argument presented conjures up a statutory hurricane from which we are asked to pluck a wind-borne feather. We are unable to spot a hurricane in that argument and are thus unwilling to grasp for the feather. As a beginning point, it is asserted that McMackin may not maintain a wrongful death claim in these circumstances. The relevant statute provides:

§ 1–38–101. **Actions for wrongful death which survive; proceedings against executor or administrator of person liable.**

Whenever the death of a person is caused by wrongful act, neglect or default such as would have entitled the party injured to maintain an action to recover damages if death had not ensued, the person who would have been liable if death had not ensued is liable in an action for damages, even though the death was caused under circumstances as amount in law to murder in the first or second degree or manslaughter. If the person liable dies, the action may be brought against the executor or administrator of his estate. If he left no estate within the state of Wyoming, the court may appoint an administrator upon application.

Wyo. Stat. Ann. § 1–38–101 (LexisNexis 2003).

█ [¶ 5] In the original opinion we have adequately explained the foundations of, as well as the wide acceptance of, the loss of chance doctrine and we will not iterate that material here. Those same materials make clear that loss of chance resists precise definition and is subject to varying interpretations and different applications. In some jurisdictions it is allowed as a wrongful death action where the consequences of the negligent act(s) is, in fact, death. Where the result of the negligence is not death, traditional negligence/medical malpractice princi-

ples apply. In some jurisdictions, loss of chance claims are allowed as a survivorship claim. In some jurisdictions it is treated as a common law cause of action or a stand-alone theory of recovery. We are comfortable that the loss of chance claim asserted in this matter fits within Wyoming's wrongful death statute, although it may expand to some limited extent our previous pronouncements in this area of the law. We might retreat to a recognition of loss of chance as a stand-alone theory or as a common law claim, but we are unable to detect an erosion of the legislature's intent or an intractable conflict with our existing precedents in ruling as we do. We are exhorted that the only injury that may be vindicated by the wrongful death statute is "death." The recognition of Mrs. Brown's loss of a chance "to live," as being actionable within the context of the wrongful death statute, does not strain the bounds of reason, logic, or the law.

[¶ 6] The Supreme Court of Wisconsin recognized that loss of chance has its roots in the Restatement (Second) of Torts § 323(a):

... The majority of jurisdictions, however, have interpreted sec. 323(a) as lessening the plaintiff's burden of proof on causation.... Once the plaintiff shows that the defendant's negligence increased the risk that the plaintiff's injury would occur, sec. 323(a) allows the trier of fact to determine whether the negligence was a substantial factor in causing the injury....

This court has previously approved of sec. 323(a)....

We conclude that the evidence in this case was sufficient under current Wisconsin law to present the causation to the trier of fact. To establish causation in Wisconsin, the plaintiff bears the burden of proving that the defendant's negligence was a substantial factor in causing the plaintiff's harm. "The phrase 'substantial factor' denotes that the defendant's conduct has such an effect in producing the harm as to lead the trier of fact, as a reasonable person, to regard it as a cause, using that word in the popular sense." ... " 'All that is required in negligence cases is for the plaintiff to present probable facts from which negligence and causal relations may

be reasonably inferred.' " ... One who negligently creates a dangerous condition may be held liable even though another cause is also a substantial factor in contributing to the result.... "There may be more than one substantial causative factor in any given case."... The defendant's negligent conduct need not be the sole or primary factor in causing the plaintiff's harm....

... We disagree that to establish causation the Ehlingers must show that proper diagnosis and treatment *would* have been successful. We conclude that in a case of this nature, where the causal relationship between the defendant's alleged negligence and the plaintiff's harm can only be inferred by surmising as to what the plaintiff's condition would have been had the defendant exercised ordinary care, to satisfy his or her burden of production on causation, the plaintiff need only show that the omitted treatment was intended to prevent the very type of harm which resulted, that the plaintiff would have submitted to the treatment, and that it is more probable than not the treatment *could* have lessened or avoided the plaintiff's injury had it been rendered. It then is for the trier of fact to determine whether the defendant's negligence was a substantial factor in causing the plaintiff's harm. [Emphasis in original. Internal citations omitted.]

*Ehlinger v.Sipes,* 155 Wis.2d 1, 454 N.W.2d 754, 758–59 (1990); *also see Jorgenson v. Vener,* 2000 SD 87, ¶¶ 10–20, 616 N.W.2d 366 ¶¶ 10–20 (S.D.2000).

[¶ 7] The statutory conflicts proposed to us do not require us to modify our original opinion. However, to further clarify our holding, we will note two further significant points. First, WCPJIC 3.04, at 18 (Revised April 1994) provides:

**CAUSE—DEFINED**

An injury or damage is caused by an act, or a failure to act, whenever it appears from the evidence in the case that the act or omission played a substantial part in bringing about the injury or damage.

This instruction will work well with the concepts that inhere in the loss of chance doctrine. Some additional guidance in fashion-ing appropriate instructions can be found in Ronald W. Eades, *Jury Instructions on Medical Issues,* §§ 10–9 and 10–10 at 575–80 (1997 and Supp.2001):

**10–9. "Loss of a chance."**

If you believe from the evidence the [state nature of defendant's act or omission] increased the risk of [death] [the harm sustained] by significantly decreasing the patient's chances of [survival] [recovery], you should find the defendant to be liable.

**10–10. Loss of Chance—Damages based upon percentage amount of loss of chance of better result.**

If you find from the evidence that [Defendant] was negligent in the treatment of [Plaintiff] and that this negligence was a substantial factor in reducing [Plaintiff's] chances of obtaining a better result, then you will award such damages as will fairly compensate [Plaintiff] for this loss of chance of a better result.

[¶ 8] A plaintiff is not required to establish the lost chance of recovery or survival in an exact percentage for the matter to be submitted to the jury. The jury is to consider evidence of percentages of the lost chance in the assessment and apportionment of damages. The damages recoverable by the plaintiff equals the total sum of the damages for the underlying injury or death multiplied by the percentage of the lost chance. *Roberts v. Ohio Permanente Medical Group,* 76 Ohio St.3d 483, 668 N.E.2d 480, 484–85 (1996).

[¶ 9] Finally, we take note that there is often a special need for expert testimony in loss of chance cases. As set out in J.D. Lee and Barry A. Lindahl, *Modern Tort Law Litigation and Liability,* § 25:92 at 25–120–21, (2002):

It is the general rule that expert testimony is required to establish the connection between the alleged negligence of the defendant and the illness, injury, or death of which the plaintiff complains.

However, where the matter is within common knowledge, the basis for the requirement of expert testimony is dissipated. The classic example of this exception

is where a foreign object is left in the patient's body. Thus, where a suture needle had been left in the patient's body, expert testimony was held to be unnecessary to establish causation between the alleged negligence of the defendant doctor and the pain of which the plaintiff complained. In another case, expert medical testimony was held unnecessary to establish that a surgical error in one operation, a severed ureter, was the proximate cause for the plaintiff being hospitalized and undergoing a second operation.

Other illustrations of the exception to the rule requiring expert testimony include a case where the defendant physician was charged with having left the decedent, wounded by gunshot, unattended at a critical time; where the plaintiff was given the wrong injection and upon discovery was then given a second, or offsetting injection, a tranquilizer, and after being left unattended, tried to go to the washroom, fainted and fell, sustaining injuries; and where a delirious expectant mother fell from a bed in the obstetrical department labor room while the nurse assigned to the room was absent.

It is readily apparent that this case does not fit into one of the exceptions to the requirement for foundational expert testimony.

**Application of Governmental Claims Act**

[¶ 10] It is claimed our opinion does not give effect to the Wyoming Governmental Claims Act. The applicable portions of the Act are set out below:

§ 1–39–102. **Purpose.**

(a) The Wyoming legislature recognizes the inherently unfair and inequitable results which occur in the strict application of the doctrine of governmental immunity and is cognizant of the *Wyoming Supreme Court decision of Oroz v. Board of County Commissioners,* 575 P.2d 1155 (1978). It is further recognized that the state and its political subdivisions as trustees of public revenues are constituted to serve the inhabitants of the state of Wyoming and furnish certain services not available through private parties and, in the case of the state, state revenues may only be ex-

pended upon legislative appropriation. This act is adopted by the legislature to balance the respective equities between persons injured by governmental actions and the taxpayers of the state of Wyoming whose revenues are utilized by governmental entities on behalf of those taxpayers. This act is intended to retain any common law defenses which a defendant may have by virtue of decisions from this or other jurisdictions.

(b) In the case of the state, this act abolishes all judicially created categories such as "governmental" or "proprietary" functions and "discretionary" or "ministerial" acts previously used by the courts to determine immunity or liability. This act does not impose nor allow the imposition of strict liability for acts of governmental entities or public employees.

Of course, governmental entities such as JCHC and employees of governmental entities such as Nurses Sather and Blakely are immune from tort liability except as provided in the Act. Wyo. Stat. Ann. § 1–39–104 (LexisNexis 2003).

[¶ 11] Wyo. Stat. Ann. § 1–39–109 (LexisNexis 2003) provides:

§ 1–39–109. **Liability; medical facilities.**

A governmental entity is liable for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation of any public hospital or in providing public outpatient health care.

[¶ 12] Wyo. Stat. Ann. § 1–39–110 (LexisNexis 2003) provides:

§ 1–39–110. **Liability; health care providers.**

(a) A governmental entity is liable for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of health care providers who are employees of the governmental entity, including contract physicians who are providing a service for state institutions, while acting within the scope of their duties.

(b) Notwithstanding W.S. 1–39–118(a), for claims under this section against a physician employed by the state of Wyoming based upon an act, error or omission occurring on or after ·May 1, 1988, the liability of the state shall not exceed the sum of one million dollars ($1,000,000.00) to any claimant for any number of claims arising out of a single transaction or occurrence nor exceed the sum of one million dollars ($1,000,000.00) for all claims of all claimants arising out of a single transaction or occurrence.

[¶ 13] We will address the issue only briefly. The contention is founded on the presumption that we are adopting a remedy that permits recovery where a less than fifty percent chance of avoiding death is lost. It is readily evident that that is not the case, both from our original opinion, and from the additional materials cited herein. The negligent act(s) must be a substantial cause (more likely than not) of the lost chance to survive. The damages to be awarded must be apportioned as more fully set out above. We conclude that McMackin's claims are within the protection afforded by the Governmental Claims Act.

## CONCLUSION

[¶ 14] Upon consideration of the briefs on rehearing and the accompanying argument, we sustain our original decision as augmented in this opinion.

HILL, C.J., delivered the opinion of the Court; LEHMAN, J., filed a dissenting opinion.

LEHMAN, Justice, dissenting.

[¶ 15] In my dissent to the initial majority opinion issued by this court, *McMackin v. Johnson County Healthcare Center,* 2003 WY 91, 73 P.3d 1094 (Wyo.2003), I expressed that I would affirm the ruling of the district court granting summary judgment in favor of ·appellees. I reached this conclusion because appellant failed to present any expert opinion based on reliable scientific foundation and, thus, the majority's reliance on the "loss of chance" doctrine was misplaced. Relying on this same foundation, I must accordingly again respectfully dissent with the majority's reasoning as I continue to believe this case is not an appropriate case for the application of the "loss of chance" doctrine.