Uriel R. LIMJOCO, M.D., Plaintiff-Appellant,†

v.

Jeffrey W. SCHENCK, M.D., and Beth A. Schenck, M.D., Defendants-Respondents,

Gary W. STEWART, M.D., and Does I–XX, Defendants.

Court of Appeals

*No. 91–2658. Oral argument April 29, 1992.—Decided June 10, 1992.*

(Also reported in 486 N.W.2d 567.)

†Petition to review denied.

704

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *William H. Alverson, Michael B. Apfeld* and *John L. Kirtley* of *Godfrey & Kahn, S.C.* of Milwaukee. There was oral argument by *William H. Alverson.*

On behalf of the defendants-respondents, the cause was submitted on the brief of *Stephen E. Kravit* and *Brian G. Cahill* of *Kravit, Gass & Weber, S.C.* of Milwaukee. There was oral argument by *Stephen E. Kravit.*

Before Nettesheim, P.J., Brown and Anderson, JJ.

BROWN, J.   This appeal involves the interpretation of the statute granting immunity from liability to those who in good faith participate in peer review of health care providers, sec. 146.37, Stats. We affirm the summary judgment dismissing Dr. Uriel Limjoco's claim against Drs. Jeffrey and Beth Schenck for conspiracy and tortious interference with contract because the Schencks had the good faith belief that they were participating in a peer review of Limjoco's surgical decisions, and Limjoco established no facts or inferences to negate the presumption of good faith they enjoyed as participants in that process.

Limjoco is a general surgeon who was employed by the Falls Medical Group (the clinic) from October 1969 through July 1989. In early 1989, there was a decline in the number of surgery referrals to Limjoco from the other doctors at the clinic. In March or April 1989, Dr. Gary Stewart, who was the quality assurance director and the only other general surgeon at the clinic besides Limjoco, reviewed the files of twenty-two patients of Limjoco. Stewart also asked Jeffrey Schenck, a gastroenterologist, and Beth Schenck, a dermatologist, to review some of those files and give their opinions as to whether the cases had been handled appropriately. The Schencks had performed some of the same surgical procedures as Limjoco in their respective specialties. On May 6, Stewart presented his concerns about Limjoco to the executive committee.

Stewart then drew up a list of questions on the problem cases and presented them to Limjoco for him to provide the clinic's executive committee with answers. In June, Limjoco went to the executive committee meeting, accompanied by his attorney. However, the executive committee postponed the meeting because Limjoco had not given advance notice that he would be repre-

707

sented by counsel and the clinic's attorney was not present.

On July 5, Limjoco met with three doctors of his choice at one of the doctor's homes to discuss the twenty-two cases. At this meeting, Limjoco submitted his resignation effective the end of the month. Limjoco claims that he resigned because the three doctors did not give him the opportunity to explain the twenty-two cases but simply told him that the referring physicians had lost confidence in him and that he should leave the clinic. The Schencks claim Limjoco came to the meeting with a typed letter of resignation.

Later, Limjoco received approximately $900,000, which the trial court called "negotiated resignation bene-fits." Limjoco claims that this payment was made pursu-ant to his employment contract and represented his ownership interests in the clinic's accounts receivable and physical plant, as well as his pension and profit sharing plan. He claims there was no payment for dam-age to his career.

In April 1990, Limjoco brought a lawsuit against both Stewart and the Schencks for tortious interference and conspiracy. He argues that the Schencks partici-pated in destroying his reputation by reviewing the cases Stewart gave them, by helping Stewart draw up the ques-tions later presented to Limjoco, and by Jeffrey Schenck's response to questions about the cases at the May 6 executive committee meeting. The Schencks deny helping to draw up the questions.

The Schencks moved for summary judgment. The trial court granted their motion on grounds that the Schencks were immunized from liability by the "peer review" statute, sec. 146.37, Stats. The claim against Stewart remains pending in the circuit court.

Limjoco argues that summary judgment for the Schencks was inappropriate because there was a factual dispute in the form of legitimate competing inferences about the Schencks' good faith. He also contends that the trial court made an error of law when it granted the Schencks immunity from liability under the "peer review" statute because the informal procedure followed by Stewart and the executive committee was an ad hoc investigation of him, not a peer review procedure having the characteristics required by sec. 146.37, Stats.

■

In reviewing a summary judgment, we apply the same methodology as the trial court without deference to the trial court's conclusions. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315-17, 401 N.W.2d 816, 820-21 (1987). If a claim for relief has been stated, summary judgment must be entered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Section 802.08(2), Stats.; *Green Spring Farms* at 315, 401 N.W.2d at 820.

Limjoco argues that a program reviewing health care providers must have the following characteristics to give the participants immunity from liability: (1) it must be conducted as part of an organized program; (2) the program must have the remedial purpose of improving health care; (3) records must be kept pursuant to sec. 146.38, Stats.; and (4) the person being investigated must have a reasonable opportunity to be heard. Limjoco also argues that the participants do not have a presumption of good faith unless the peer review program has these characteristics.

709

Limjoco contends that he was subjected to an ad hoc investigation with no record requirements and no opportunity for him to be heard. He also claims that the investigation did not have a remedial health care objective but was for the business expediency of terminating his association with the clinic in order to increase the earnings of the other doctors.

The Schencks respond that, in order to qualify as a protected peer review program, sec. 146.37, Stats., requires only that the program be organized and operated for the purpose of improving the quality of health care. They contend that nothing in the statute requires the protected program to be established by formal written procedures or to have the characteristics proposed by Limjoco. The Schencks contend that their review of some of Limjoco's cases was part of a protected peer review program in which the quality assurance director and the executive committee handled quality of care issues involving any of the clinic's doctors.

■

The issue to be decided in this case is the meaning of sec. 146.37, Stats. Interpretation of a statute presents a question of law. *Brandt v. LIRC,* 160 Wis. 2d 353, 361, 466 N.W.2d 673, 676 (Ct. App. 1991). We follow well-established principles when determining the meaning of a statute. *State v. Gassen,* 143 Wis. 2d 761, 764, 422 N.W.2d 863, 864 (Ct. App. 1988). The aim of statutory construction is to discern the intent of the legislature, and the primary source to be used is the language of the statute itself. *State v. Eichman,* 155 Wis. 2d 552, 560, 456 N.W.2d 143, 146 (1990). The statute must be interpreted on the basis of the plain meaning of its terms and, unless there is ambiguity, the plain meaning must be followed. *State v. Livingston,* 159 Wis. 2d 561, 573, 464 N.W.2d 839, 844 (1991). A statute is ambiguous if rea-

sonable persons can understand it differently, but whether reasonable persons can disagree on a statute's meaning is a question of law. *Meunier v. Ogurek*, 140 Wis. 2d 782, 786, 412 N.W.2d 155, 157 (Ct. App. 1987). This court may not search for ways to find a statute ambiguous when its terms are clear. *Dickie v. City of Tomah*, 160 Wis. 2d 20, 25, 465 N.W.2d 262, 263–64 (Ct. App. 1990).

The relevant portions of sec. 146.37, Stats., are the following:

> (1g)   [N]o person acting in good faith who partici-
> pates in the review or evaluation of the services of
> health care providers . ... in connection with any
> program organized and operated to help improve the
> quality of health care . . . is liable for any civil dam-
> ages as a result of any act or omission by such person
> in the course of such review or evaluation.
>
> (1m)   The good faith of any person specified in subs.
> (1g) and (3) shall be presumed in any civil action.
> Any person who asserts that such a person has not
> acted in good faith has the burden of proving that
> assertion by clear and convincing evidence.

We conclude that the terms of the statute are plain and admit of no ambiguity. The clear purpose of the statute, as found in subsec. (1g), is to improve the quality of health care by encouraging persons to participate in the review of health care providers. The statute does this by freeing such persons from fear of a lawsuit through a grant of immunity to those who participate in such a review in good faith.

We conclude that it would defeat the purpose of the statute and create a trap for the unwary to deny immunity to a good faith participant in medical peer review

711

even if the peer review program itself was not organized and conducted in the proper manner, if indeed there is a "proper" manner. It would similarly defeat the purpose of the statute to say that the good faith of the participants can be presumed only if the peer review program is correctly organized. Therefore, anyone who has the good faith belief that they are participating in a valid peer review procedure of a health care provider is entitled to the presumption of good faith in sec. 146.37(1g), Stats., and is immune from liability, unless the presumption of good faith is overcome.

In this case, the issue is not whether the clinic actually had a statutorily protected peer review program but whether the Schencks had the good faith belief that they were participating in such a program. On the facts of this case, it puts the proverbial cart before the horse to look at how the clinic's program was organized and conducted rather than looking first at the good faith of the Schencks.

The Schencks submitted affidavits stating that they "reviewed the cases and discussed them with Dr. Stewart with the understanding that [their] comments were part of the peer review of Dr. Limjoco's work then being conducted by Falls Medical Group's Executive Committee." The summary judgment record also shows that the Schencks did not organize the committee or volunteer their services to review Limjoco's decisions. Moreover, it was not just another colleague at the clinic but the quality assurance director who requested the Schencks' evaluations of Limjoco. There is no evidence that the Schencks participated in the events affecting Limjoco beyond that initial review. Thus, the objective evidence indicates that the Schencks had every reason to believe

that they were acting within a legitimate peer review program.

The Schencks are entitled to the presumption of good faith in sec. 146.37, Stats., even if Stewart's and the executive committee's actions were more in the nature of an ad hoc committee rather than a properly organized peer review committee. This presumption entitled the Schencks to immunity from liability unless Limjoco could overcome the presumption.

At trial, it would require clear and convincing evidence to overcome the presumption. At the summary judgment stage, Limjoco simply had to present facts or alternate competing inferences sufficient to convince the trial court that there was a triable dispute regarding the Schencks' good faith.

By way of challenge to the Schencks' good faith, Limjoco claims that Jeffrey Schenck had a grudge against him which also colored Beth Schenck's evaluation. Limjoco further contends that both Schencks had an economic motive to remove him from the clinic because they believed more surgeries would then be referred to them.

Limjoco bases his allegation about a grudge on Beth Schenck's deposition testimony that she believed the clinic was better off without Limjoco "because he did not frequently perform the correct surgical procedures and . . . other doctors . . . were often called upon to bail him out . . .." She said that the source of this belief was her knowledge of cases involving her husband. Limjoco also cites Jeffrey Schenck's deposition testimony that he thought Limjoco had misdiagnosed a case which resulted in a lawsuit being initiated against Schenck. We conclude that this deposition testimony is not enough to

raise an inference that a grudge or vendetta existed. There is simply no nexus between the Schencks' opinion of Limjoco's procedures and the allegation that there was a "grudge."

Similarly, there is no link established between Limjoco's departure and any economic gain enjoyed by the Schencks after that departure. Limjoco points to Jeffrey Schenck's deposition testimony that after Limjoco's departure he was doing more endoscopies and his volume of professional activity and earnings increased. However, Jeffrey Schenck later testified that these increases were not due to Limjoco's leaving but were because Jeffrey Schenck had expanded his practice to West Bend and this accounted for twenty-five percent of his total productivity.

Limjoco also bases his economic gain argument on an allegation that the Schencks made it known on their arrival at the clinic that they believed certain procedures in their fields, previously performed by Limjoco, should be referred exclusively to them. However, Limjoco himself testified that he got this information, as it related to Beth Schenck, from his secretary, who got it from a receptionist. This is inadmissible hearsay upon hearsay. Furthermore, Limjoco testified that he had no direct evidence or even hearsay knowledge for this allegation relative to Jeffrey Schenck.

We conclude that Limjoco fails to make the Schencks' good faith a disputed issue of fact because he offers only conclusory statements about the grudge and the Schencks' economic gain. He does not present established facts from which inferences of bad faith could be

drawn. Therefore, we conclude that summary judgment was properly granted to the Schencks as a matter of law.

*By the Court.*—Judgment affirmed.