Hans Rechsteiner, Plaintiff-Appellant,†

v.

Hazelden, Spooner Health System, Board
of Directors of Spooner Health System, William
Stewart, III, Judy Cuskey, Maxine Long and
Mike Shafer, Defendants-Respondents,

ABC Insurance Company, DEF Insurance Company
and GHI Insurance Company, Defendants.

Court of Appeals

*No. 2006AP1521. Submitted on briefs March 19, 2007.
—Decided May 22, 2007.*

2007 WI App 148

(Also reported in 736 N.W.2d 219.)

† Petition to review granted 9/13/07.

658

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James A. Drill* and *Anne E. Schmiege* of *Doar Drill, S.C.* of New Richmond.

On behalf of the defendant-respondent, Hazelden, the cause was submitted on the brief of *Louise Dovre Bjorkman, Mark A. Solheim* and *Stephen P. Laitinen* of *Larson King, LLP* of St. Paul, MN.

On behalf of defendants-respondents, Spooner Health System, Board of Directors of Spooner Health System, William Stewart III, Judy Cuskey, Maxine Long and Mike Shafer, the cause was submitted on the brief of *Lindsay G. Arthur, Jr.* of *Arthur, Chapman, Kettering, Smetak & Pikala, P.A.* of Minneapolis, MN.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J. Hans Rechsteiner appeals a summary judgment dismissing his claims for negligence, malpractice, and defamation against Spooner Health System; its Board of Directors; directors Judy Cuskey, Maxine Long, and William Stewart, III; administrator Mike Shafer; and rehabilitation clinic Hazelden. Rechsteiner asserts the circuit court erred by concluding the defendants enjoyed statutory immunity. Rechsteiner also appeals an order denying his motion for a continuance of the summary judgment hearing. We conclude the court properly applied immunity and appropriately exercised its discretion to deny the continuance. Accordingly, we affirm the judgment and order.

## Background

¶ 2. Rechsteiner began working for Spooner in 1982. From then until July 2003, he was Spooner's only surgeon and was on call twenty-four hours a day, seven days a week, unless he made arrangements with another surgeon in the region. In July 2003, Spooner hired an additional surgeon.

¶ 3. On March 8, 2003, while on call, Rechsteiner went snowmobiling with Nathan Christner. Christner was involved in an accident and was seriously injured. Sheriff's deputies were dispatched to investigate and,

660

upon interviewing Rechsteiner, noticed an odor of alcohol. A preliminary breath test, administered approximately an hour after the accident, indicated Rechsteiner's blood-alcohol concentration was .06%.

¶ 4. The Sheriff's Department sent a copy of the accident report to Spooner. Rechsteiner had been previously admonished about drinking, particularly in public, while on call, and Spooner and the Board grew more concerned about Rechsteiner's ability to provide care to patients. Thus, Spooner instituted a formal review process.

¶ 5. As part of this review, Rechsteiner was referred to Hazelden for a five-day assessment at Spooner's expense. At Hazelden's request, to aid its assessment, Rechsteiner authorized staff to contact his colleagues and acquaintances. Hazelden initiated contact via telephone. During some of these calls, Cuskey, Long, and Stewart made statements that Rechsteiner considers defamatory. All statements were recorded in his medical chart but were never made public beyond Rechsteiner's complaint.

¶ 6. Hazelden initially concluded Rechsteiner was alcohol dependent, resulting in a twenty-eight-day inpatient course of treatment. Following the inpatient treatment, Rechsteiner was enrolled in a twelve-week follow-up program, where two counselors advised him they did not think he was alcohol dependent. Rechsteiner contacted Hazelden and asked that it reconsider his diagnosis. Hazelden amended the diagnosis to alcohol abuse.

¶ 7. Rechsteiner brought suit, contending that had the abuse diagnosis been made initially, he would not have had to complete the inpatient treatment and would not have lost the month's worth of income. He also complained about the allegedly defamatory state-

ments made during Hazelden's phone calls, contending they lowered his reputation in the community and decreased his business.

¶ 8. The defendants moved for summary judgment, asserting statutory immunity for participation in a peer review of a physician. Rechsteiner moved for a continuance for additional discovery time, contending he had been unable to schedule depositions with Hazelden personnel and a motion to compel was pending. The court denied the motion for continuance and granted the defendants' motion, holding they had immunity. Rechsteiner appeals.

## Discussion

¶ 9. We review summary judgments de novo, using the same methodology as the circuit court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2).[1] Statutory interpretation and application of a statute to a set of facts are questions of law. *World Wide Prosthetic Supply, Inc. v. Mikulsky*, 2002 WI 26, ¶ 8, 251 Wis. 2d 45, 640 N.W.2d 764.

### I. Immunity

¶ 10. Wisconsin Stat. § 146.37(1g) provides, in relevant part:

> [N]o person acting in good faith who participates in the review or evaluation of the services of health care

---

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

providers ... is liable for any civil damages as a result of any act or omission by such person in the course of such review or evaluation. Acts and omissions ... include, but are not limited to, acts or omissions by peer review committees or hospital governing bodies in censuring, reprimanding, limiting or revoking hospital staff privileges ... or taking any other disciplinary action against a health care provider ....

Rechsteiner does not contend there was no peer review process. Rather, he asserts that Hazelden was not a part of the review process because the clinic did not review or evaluate his services as a surgeon but merely evaluated whether he had chemical dependency issues.[2] The trial court appears to have assumed Hazelden was part of the review process when it applied § 146.37(1g). Thus, we first address whether Hazelden was indeed part of a "peer review process."

¶ 11. WISCONSIN STAT. § 146.37 exists "to encourage hospitals to perform quality-control reviews aimed at improving, prospectively, their services." *Hofflander v. St. Catherine's Hosp.*, 2003 WI 77, ¶ 119, 262 Wis. 2d 539, 664 N.W.2d 545. Thus, Rechsteiner does not seriously challenge the appropriateness of Spooner initiating the review process. Although he contends the hospital knew of his drinking prior to the snowmobile accident, there is no compelling argument against a hospital reviewing the services of a provider who, it seems, may have been providing those services after consuming intoxicants.

[2] We reject Rechsteiner's unreasonably narrow construction of WIS. STAT. § 146.37(1g), advanced without citation to authority. Rechsteiner's interpretation ignores both the inclusive language of the statute and its purpose.

¶ 12. At first blush, there is a fair argument that treatment at Hazelden was not part of the review process but, rather, the result. However, a closer review of the underlying facts leads us to conclude Hazelden is properly considered part of the overall review process.

¶ 13. The Board notified Rechsteiner that it was following the "Corrective Action Procedures and Fair Hearing Plan Addendum" of Spooner's bylaws. Based on that procedure, the Board found Rechsteiner's "actions warrant corrective action." Under the bylaws, upon such a finding, the physician may either take a voluntary leave of absence or is suspended. Under either circumstance, the physician may not return to practice until he or she undergoes an assessment process "through a recognized addictionology center," complies with the center's follow-up recommendations, and is "cleared to resume practice to the satisfaction of the Medical Staff and Board." The corrective action process also requires the physician to authorize Spooner's release of information to the treatment center, and the center's release of information back to Spooner.

¶ 14. Because the bylaws require cooperation with the treatment center's after-care recommendations, it is logical to infer that compliance must be successful in the center's view before the physician will have been "cleared to resume practice" by Spooner. Unsuccessful completion could result in continued suspension or dismissal.

¶ 15. Thus, it is evident that treatment is not the end result of the review process but an integral, intermediate step, and a significant factor in whether a hospital will ultimately retain or discharge a doctor. As such, when a doctor is referred to an addictionology

center under Spooner's bylaws, that center is brought into the review process and will impact the outcome of the review.

¶ 16. In contending that Hazelden is not part of the review process, Rechsteiner relies merely on Hazelden's purpose—identification and treatment of addiction—without focusing on its role in the overall scheme. However, the evidence sufficiently indicates Hazelden is part of the whole process; it is not the review's outcome. Accordingly, WIS. STAT. § 146.37's immunity provision is extended to Hazelden for its role in Spooner's peer review of Rechsteiner's behavior.

■

¶ 17. Rechsteiner also claimed Cuskey, Long, and Stewart were not entitled to immunity for statements made to Hazelden, based on the premise that Hazelden was not part of the peer review. But the directors enjoy immunity for their comments to Hazelden because the center was a participant in the review process.

¶ 18. Rechsteiner asserts that even if the directors are entitled to immunity generally, the privilege does not apply here because the allegedly defamatory statements were not made in good faith. This, he contends, is a question that should be left to the jury and not disposed of on summary judgment.

■

¶ 19. Under WIS. STAT. § 146.37(1m), "[t]he good faith of any person specified in subs. (1g) . . . shall be presumed in any civil action. Any person who asserts that such a person has not acted in good faith has the burden of proving that assertion by clear and convincing evidence." At the summary judgment stage, this means Rechsteiner needs only to present "facts or alternate competing inferences sufficient to convince

the trial court that there was a triable dispute" regarding good faith. *Limjoco v. Schenck*, 169 Wis. 2d 703, 713, 486 N.W.2d 567 (Ct. App. 1992).

¶ 20. Rechsteiner offers two arguments on the lack of good faith. First, he claims the statements were false and personal in nature, having no bearing on his alcohol use. For example, Rechsteiner complains about the assertion that he told his ex-wife he used her to get through school and that his wife was fired from Spooner because she was concerned about his alcohol use. Rechsteiner asserts a lack of good faith can be inferred from these false statements. We disagree.

¶ 21. First, although Rechsteiner claims the veracity of the proffered statements was "easily verifiable," he does not show how the statements were false or were verifiable, nor does he show how the speakers knew the statements were false. He asserts he will show all of this at trial, but to survive summary judgment, he must do more than simply say he will present evidence later.

¶ 22. In addition, we are not convinced that the character of the statements rises to the level of bad faith. In *Limjoco*, Limjoco claimed two members of a review panel, Beth and Jeffrey Schenck, had a grudge against him. *Id.* at 713–14. This assertion was based in part of Jeffrey's deposition testimony that he believed Limjoco had misdiagnosed a case, resulting in a lawsuit against Jeffrey. We concluded Limjoco's evidence was insufficient to raise an inference of a grudge.

¶ 23. Similarly, we do not see how the statements here constitute the prima facie lack of good faith Rechsteiner claims they do. These statements appear to

go to instances of suspect behavior. While Rechsteiner asserts they have no bearing on his alcohol use, it is well-established that alcohol can influence one's personality and behavior. Although behavior is not necessarily an easily quantified criterion, Rechsteiner does not show why a discussion of strange or inappropriate behavior is irrelevant to alcohol assessment.

¶ 24. Rechsteiner secondly claims there is a lack of good faith because Spooner's attorney repeatedly asserted a privilege under Wis. Stat. § 146.38 during deposition testimony. Rechsteiner claims this privilege was inapplicable because he, as the review subject, was requesting information personally. *See* Wis. Stat. § 146.38(3)(a). Because Wis. Stat. § 146.37(2) allows courts to consider, in the good faith analysis, the extent to which the evaluation committee attempts to prevent the physician from obtaining access to information during the review process, Rechsteiner argues the assertion of an invalid privilege demonstrates a lack of good faith.

¶ 25. Good faith is, in part, a subjective inquiry. *Harris v. Bellin Mem'l Hosp.*, 13 F.3d 1082, 1087 (7th Cir. 1994). Thus, absent more, the fact that an attorney asserts a privilege, even an incorrect one, on his client's behalf is insufficient to show a lack of good faith. That is, an assertion of an incorrect privilege is not automatically proof of bad faith, it is only proof of an error. A more appropriate remedy for assertion of an incorrect privilege by an opponent is a motion to compel.

### Malpractice and Misdiagnosis

¶ 26. The court applied Wis. Stat. § 146.37 to all claims against all defendants, although the only claim

667

against Hazelden was a malpractice claim for the misdiagnosis. We are not convinced the statute is broad enough to encompass a medical malpractice claim. However, we may nevertheless affirm the trial court's correct result, even if there was an error in the reasoning. *See Doe v. GMAC*, 2001 WI App 199, ¶ 7, 247 Wis. 2d 564, 635 N.W.2d 7. We conclude that a medical malpractice claim would be, in any event, unsustainable.

¶ 27. Rechsteiner complains that had his diagnosis been alcohol abuse, rather than alcohol dependence, he would not have been subjected to the twenty-eight-day inpatient treatment. His proof was an affidavit from an alcohol counselor who averred that, in his thirty years' experience, he had never seen an alcohol abuse patient go through inpatient treatment. Hazelden, however, offered an affidavit that Rechsteiner would have been given the same treatment, regardless of the diagnosis.

¶ 28. Malpractice is actionable only if the wrong diagnosis is followed by the wrong treatment. *Ehlinger v. Sipes*, 148 Wis. 2d 260, 265, 434 N.W.2d 825 (Ct. App. 1988), *aff'd in part and remanded*, 155 Wis. 2d 1, 454 N.W.2d 754 (1990); *see also McManus v. Donlin*, 23 Wis. 2d 289, 295, 127 N.W.2d 22 (1964). Rechsteiner's affidavit from the counselor does not create a genuine factual issue regarding treatment because it is speculative. That is, the counselor does not state how *this* patient in *this* case would be treated, only that he had never seen an alcohol abuse patient go through inpatient treatment. This does not critically undercut Hazelden's unequivocal affidavit that Rechsteiner would have been treated as an inpatient for either diagnosis.

668

## The Continuance Motion

¶ 29. At the summary judgment hearing on April 7, Rechsteiner moved for a continuance because: he had not yet been able to depose anyone from Hazelden, but had a deposition scheduled for April 17; an April 5 motion to compel was pending; and the discovery deadline was November 10. Rechsteiner asserts it was error for the court to deny his motion because of the pending matters.

¶ 30. Whether to grant or deny a continuance is a decision within the trial court's discretion. *Robertson-Ryan & Assocs. v. Pohlhammer*, 112 Wis. 2d 583, 587, 334 N.W.2d 246 (1983). We will not disturb a discretionary decision absent an erroneous exercise of discretion. *Schwab v. Baribeau Implement Co.*, 163 Wis. 2d 208, 216, 471 N.W.2d 244 (Ct. App. 1991). We uphold the trial court's decision if the record shows a reasonable basis for its decision. *See id.* at 215.

¶ 31. Rechsteiner does not show how the court's exercise of discretion was erroneous. He merely asserts that it was, but he must offer more than a conclusory allegation of error. Hazelden and Spooner, on the other hand, demonstrate the propriety of the court's decision.

¶ 32. The trial court noted that this case was filed March 29, 2005. Spooner first filed a summary judgment motion on November 18, 2005. A hearing on the motion was set for February 7, 2006, but was rescheduled to April 7 pursuant to the parties' agreement following a scheduling conference. Approximately a week and a half after the scheduling, Spooner representatives were deposed. It was there that counsel asserted the allegedly improper statutory privilege, but Rechsteiner did not file a motion to compel at that time.

¶ 33. The trial court properly exercised its discretion by denying Rechsteiner's motion for a continuance. Its determination that Rechsteiner made little or no attempt to obtain necessary information until just before the already-rescheduled summary judgment motion hearing is supported by the record. The court was not required to give Rechsteiner more time to do nothing.

*By the Court.*—Judgment and order affirmed.